### TALCOTT *against* WILCOX and another.

It is the settled law of this state, that if the vendor of personal property, be permitted, after the sale, to retain the actual and visible possession, it is, unexplained, conclusive evidence of fraud.

But where the personal property of *A.*, consisting of cattle and farming utensils, having been attached, in *June*, by his creditors, *B.*, the mother of *A.*, purchased it, in *August*, at its full value, under an agreement that the purchase money should be applied in payment of the debts due from *A.* to such creditors, and it was so applied ; it was then delivered to *B.*, and placed upon her own farm, where it remained until *November ; A.* having been the tenant of *B.* on the same farm, for several years previously, the tenancy was continued after the sale, and *A.* used the property in the same manner that he had done before ; it was held, in an action of trespass brought by *B.* against a creditor of *A.*, who afterwards attached the property, that these facts furnished no evidence of a trust between the vendor and vendee ; that the transaction was not calculated to deceive third persons, or to give *A.* a delusive credit ; and consequently, that the sale was valid.

The fact that a tenant is in open possession of stock and farming utensils belonging to his landlord, is not a badge of fraud ; the possession of the tenant being that of the landlord, and furnishing no evidence that the former is the owner of the property.

Where the validity of the sale is controverted on the ground of acts of ownership exercised by the vendor after the sale, the question does not depend simply upon the acts of the vendor, but upon what he did by permission of the vendee.

A verdict must be clearly against the weight of evidence, to authorize a new trial on that ground.

THIS was an action of trespass for taking and carrying away several oxen, carts &c., alleged to be the property of the plaintiff.

The cause was tried at *Hartford*, *September* term, 1831, before *Daggett*, J.

The defendant *Wilcox*, as a deputy sheriff, and the other defendant, as a creditor of *Jared G. Talcott*, a son of the plaintiff, took the property in question, by virtue of a legal process against him, on the 11th of *November*, 1826. Before and at the time of the failure of *J. G. Talcott*, in *June*, 1829, he was the undisputed owner of the property. It was then attached, by his creditors, and taken from his possession. The plaintiff agreed to pay the debts of the attaching creditors; and for this purpose, placed 500 dollars in the hands of *Horace Hale*, her son-in-law, for which *J. G. Talcott* gave her his promissory note of that amount; it being further agreed, that as soon as the oxen, carts &c. could be redeemed, they should be received by her at an appraisement, and the amount indorsed on the note; and then the property was to be replaced on the plaintiff's farm, to be there used. This was accordingly done, in *August*, 1829, so that the articles in question were sold to the plaintiff, for a valuable consideration, before they were attached by the defendants. The great point in the cause was, whether the vendor was not suffered to remain in possession of this property, using it as his own, from the sale in *August*, 1829, until it was attached by the defendants.

In relation to this point, it was admitted, That the plaintiff owned a farm, on which *J. G. Talcott*, with his wife and children, had lived, for twelve years preceding his failure, and on which the property in question was kept by him; that he and his family lived in the house on the farm, and occupied it; that all the stock and farming utensils, and whatever was produced from the farm, belonged to him; that he agreed to supply her with all the necessaries and conveniences of life, and down to the time of his failure, had accordingly supplied her with wood, milk, butter, flour, pork, cheese, &c.; that for the last two or three years preceding the failure of her son, she had resided principally at the house of her son-in-law, in the immediate neighbourhood, but had always kept her wardrobe at her own house, and retained therein for her occasional use a front room and chamber, with their furniture.

*Hartford,*
June, 1832.

Talcott
*v.*
Wilcox.

On the part of the plaintiff, *J. G. Talcott* testified, that he gave up to his mother the controul of the farm and property ; that he considered the property, after the sale in *August*, as his mother's ; that a hired man on the farm, was paid by her, to take care of the farm and property, which he accordingly did ; that he (the witness) took nothing from the farm but by her permission ; that though he had offered to sell some of the articles in question, after the sale to her, yet it was at her request ; that he asked her for the use of the team and other articles, to transport brick, &c.

On the part of the defendants, *George Hale*, a near neighbour, testified, that *J. G. Talcott* lived on the farm after, as he had done before, the sale ; and used the cattle &c. as he always had done.    He added, that the list for that year, was in the name of the plaintiff.

*Guy Sampson* testified, that he also saw *J. G. Talcott* using the oxen, cart, &c. after, as he had done before, the sale, there being no difference ; that he saw him driving team with brick ; that the witness called on him to hire his wagon, to which he replied that it was not fit—said also, that he had been applied to for it, the day before.

*Elisha Porter* testified, that he hired of *J. G. Talcott*, in *August* and *September*, his cart and cattle ; kept his cart for a month : saw no difference in the use of any of the property ; the witness paid him for the use of the articles ; and he offered to sell witness one of the carts.

*Thaddeus Wells* testified also to the use of all the property as he had done ; and that he offered to sell him a cart.

*David Hubbard* testified, that in *September*, *J. G. Talcott* carted stone, one day, and *Chapin* the hired man, the next ;— that in *October*, 5000 bricks were brought, by *J. G. Talcott*, to the witness.

*Jared Welles, Lucius Talcott* and *Frary Hale* severally testified, that they saw no difference in his use of the farm before and after the sale.

All these witnesses were well acquainted with *J. G. Talcott* and the farm, cattle, &c.    There was no proof other than the testimony of *J. G. Talcott*, of the plaintiff's ever having in her possession any of the articles in question ; nor of his having said to any one of the persons, who applied for any of those articles, that he did not own them.

The jury returned a verdict for the plaintiff, with damages

to the value of the property. The judge returned them to a second consideration, observing, that the evidence shewed, that the possession of the property had never been changed, and that it remained with *J. G. Talcott* to enable him to gain a delusive credit ; that he was still to take the benefit of it, notwithstanding the sale ; and that the sale was, therefore, void. The jury still adhered to their verdict, and it was accepted. The defendants thereupon moved for a new trial, on the ground that the verdict was against the weight of evidence.

*Hartford,*
*June, 1832.*

*Talcott*
*v.*
*Wilcox.*

*N. Smith* and *Toucey*, in support of the motion, contended, 1. That the settled rule of law, in this state, is, that if the vendor of personal property retain the actual visible possession before the world, after the sale, it is conclusive evidence of fraud, unless explained by satisfactory reasons, to be shewn to and approved by the court. *Woodbridge* v. *Perkins,* 3 *Day* 377. *Burrows* v. *Stoddard,* 3 *Conn. Rep.* 160. *Patten* v. *Smith,* 4 *Conn. Rep.* 455. *Swift* & al. v. *Thompson,* 9 *Conn. Rep.* 63. 1 *Swift's Dig.* 267.

2. That this case is not within any exception of the rule ; and therefore, the only question for the jury was, Did the vendor retain the actual visible possession before the world, after the sale ?

3. That the weight of evidence, is, decidedly, on the affirmative side of this question, and consequently, against the verdict. The defendants' proof from eight witnesses, is, that *J. G. Talcott,* the vendor, retained the actual visible possession and the beneficial use, and exercised every act of ownership, speaking of the property as his, letting it for gain, and offering it for sale, without even verbally disclaiming ownership. On the other hand, the plaintiff's witness clearly admits, that he retained the actual visible possession before the world ; and he does not deny, that he had the use and profits, without accounting ; nor does he shew the slightest visible change, or a single circumstance from which the world could have suspected it. But taking his testimony without these deductions, the motion still presents the case of eight disinterested witnesses against one ; and that one not equal to one creditable witness, being the plaintiff's son, the vendor, party to the family transaction, interested to uphold it, and not corroborated by others.

*Hungerford* and *Merrick,* contra, observed, 1. That up-

on the uncontroverted facts in the case, the object of the arrangement was not to defeat or delay the claims of creditors, but to satisfy them, to the full extent of the value of the property. The plaintiff owned the farm ; this property was on it, and necessary to the occupation of it ; and her design was, to obtain the property for her own use.

2. That the vendor's remaining in possession of the property, after the sale, is only *prima facie* evidence of fraud, and may be explained. *Burrows* v. *Stoddard,* 3 *Conn. Rep.* 160. *Bissell* v. *Hopkins,* 3 *Cowen* 166. and the numerous authorities cited, by the reporter, in a note to that case, *p.* 189. & *seq.*

3. That if even the strong rule in *Edwards* v. *Harben,* 2 *Term Rep.* 596. were to be recognized as law, the evidence, as detailed in the motion, does not bring this case within the principle of that decision ; as the property was to be considered as in the possession of the plaintiff rather than of *J. G. Talcott.* *Kidd* v. *Rawlinson,* 2 *Bos. & Pull.* 59. *Jezeph* v. *Ingram,* 8 *Taun.* 838. S. C. 1 *Moore* 189. *Steward* v. *Lombe* & al. 1 *Brod. & Bing.* 167. What should the plaintiff do with this property ? Should she put it on her neighbour's farm ? Or should she buy another farm to put it on ? Or should she turn her son out of doors ? The law does not require either of these things. An aged woman could not *personally* take the oversight of the property and use it. She could possess and use it only by her agent—her hired man—as she did.

4. A new trial will not be granted, unless the verdict was very clearly against the evidence and against substantial justice. 1 *Swift's Dig.* 782. Here, upon the facts admitted, substantial justice is, at least, as much with the plaintiff as with the defendants ; so that nothing would be gained, in that respect, by disturbing the verdict. Then the testimony, even of the defendants' witnesses, is not *wholly* in their favour. It shews that the farm was managed by the plaintiff's hired man ; and that the property in controversy was put into the list in her name. Taking the whole evidence together, and in connexion with the facts admitted, it presented a case peculiarly proper for the determination of the jury.

Bissell, J. In this case a new trial is sought, on the ground that the verdict is against evidence. From the facts disclosed in the motion, there is no doubt that the plaintiff was the law-

ful owner of the property in question. She purchased it for a full and adequate consideration. Nor were there any circumstances attending the purchase, which tended to prove it fraudulent, as to the creditors of *Jared G. Talcott*, the vendor. The purchase money was intended to be applied, and was in fact applied, to the payment of his debts. And the only question to the jury was, whether the plaintiff had so conducted with the property, as to render it still liable to be taken by the creditors of *Jared G. Talcott*. This was claimed, solely on the ground, that the property was suffered to remain in his possession. It should be remembered, that this property was attached, in *June*, 1829, and remained in the custody of the law until it was purchased, by the plaintiff, in the month of *August* following. It was then delivered to her, and placed upon her own farm. Thus far, there is not a badge of fraud, either actual or constructive.

It is, however, said, that for a number of years previous to this, *Jared G. Talcott* was the tenant of the plaintiff; that the tenancy was continued after the sale; that he used the cattle and farming utensils in the same manner that he had done before; and that there was no ostensible change of the property. A number of witnesses were called to prove these facts; and this was the substance of the proof on the part of the defendants. Now, admitting all this to be true, does it furnish any evidence of a trust between the vendor and vendee? Is there any thing calculated to deceive third persons, or to give to *Jared G. Talcott* a delusive credit?

There was an effectual change of the property; the sale was open and notorious; and there is, surely, nothing unusual in a tenant being in the possession of stock and farming utensils belonging to his landlord. The possession of the tenant is the possession of the landlord; and furnishes no evidence that the former is the owner of the property. The cases of *Leonard* v. *Baker*, 1 M. & S. 251. and *Latimer* v. *Batson*, 4 B. & C. 652. were much stronger than the case at bar; and in both those cases, the title of the purchaser was established.

It is, however, further contended, that *Jared G. Talcott* hired out a part of the articles, and offered others for sale, as his own property. The question, it may be remarked, does not depend upon the acts of *Jared G. Talcott*, but upon what he did, *by the permission of the plaintiff*. Was he permitted, by her, to hold himself out to the world as the owner? Of this

*Hartford,*
*June, 1832.*

Talcott
*v.*
Wilcox.

Talcott
*v.*
Wilcox.

there was no proof. Indeed, the case seems to me to be almost, if not entirely, free from doubt, upon the defendant's own testimony, taken in connection with the facts, either admitted, or satisfactorily proved on the trial. If any doubt remained, it would seem to be effectually removed, by the testimony of *Jared G. Talcott.*

This witness testifies, (and I discover nothing to discredit his evidence) that the tenancy which had before existed, was determined, on his failure; and that in his subsequent management of the farm, and of the personal property, he acted as the mere agent of the plaintiff. Besides, it was in proof, that she placed a hired man on the farm to superintend the property; and that the same was put as her's, into the assessment list. It would, indeed, seem difficult to prescribe any acts of ownership, which a female could exercise over this species of property, that were not asserted by the plaintiff. It is, undoubtedly, as has been contended, the settled law of this state, that if the vendor of personal property, be permitted, after the sale, to retain the actual and visible possession, it is, unexplained, conclusive evidence of fraud. *Patten* v. *Smith,* 4 *Conn. Rep.* 455. *Swift* & al. v. *Thompson,* 9 *Conn. Rep.* 63.

There is no complaint, that the rule was not laid down correctly, by the court. But whether the vendor, thus retained the possession, was here, as it always must be, a question of fact, for the jury. They have found, in this case, that he did not retain possession; and I cannot say, that I think they have found wrong. At any rate, this is not a verdict so clearly against the weight of evidence as to authorize us to grant a new trial.

The motion must be denied.

The other Judges were of the same opinion.

New trial not to be granted.