*Hartford,*
June,
1823.

Patten
*v.*
Smith.

| 4 | 450 |
| 64 | 57 |
| 64 | 366 |
| 4 | 450 |
| 67 | 314 |
| 4 | 450 |
| 68 | 587 |

PATTEN *against* SMITH and SHEPARD.

Where a mortgagor of personal property remained in possession, and used it as his own, it was held, that the question, whether such conveyance was fraudulent as against creditors, was a matter of fact proper to be submitted to the jury.

An apparatus for printing, consisting of a printing-press, cases, types, &c. may be *tools* within the meaning of the statute exempting certain property from execution.

But such tools, to be exempted from execution, must be necessary for the upholding of life; and whether they are of this description, is a question of fact to be submitted to the jury.

Though the possession and use of personal property, after a conveyance, constitute a strong badge of fraud; yet if such property be exempt from execution, the presumption of fraud is necessarily repelled.

This was an action of trespass, for taking and carrying away a printing apparatus, claimed by the plaintiff, consisting of a press, cases, types, &c.

The cause was tried at *Hartford, February* term, 1822, before *Peters,* J.

On the 14th of *May,* 1818, and until after the 5th of *December,* 1820, *William S. Marsh* was a book-binder in the city of *Hartford,* and carried on that business in a shop belonging to the plaintiff. On the day first mentioned, *Marsh* purchased and received of the plaintiff the printing apparatus specified in the declaration, at the price of 325 dollars, upon credit; and on the 24th of *July,* 1818, to secure the payment of that sum, and another debt due to the plaintiff, *Marsh* gave the plaintiff a promissory note for 500 dollars, payable in ten months, with interest, and a bill of sale of said printing apparatus, with such additions as he had made thereto. The bill of sale so given, was as follows: " Whereas I, *William S. Marsh,* of *Hartford,* have this day sold and assigned to *Nathaniel Patten,* of said *Hartford,* all the type and printing materials belonging to me, which I bought of said *Patten,* also including all the additions, which I have made to the printing-office, meaning one new printing-press and 250 *lb.* new type, &c. for the sum of 500 dollars: Now, therefore, I have this day executed my note to said *Patten* for the sum of 500 dollars, with interest, payable in ten months from date; it is hereby agreed, if I well and truly pay said note according to its tenor to said *Patten,* then this instrument is to be of no effect; otherwise, said *Patten* is to hold said office free from all incumbrances whatsoever, and take possession, when he pleases, after said date. *Hartford,*

24th *July*, 1818. *William S. Marsh*." During all the period above-mentioned, *Marsh* retained the possession of this property as apparent owner, used it as his own, sold some of the types, purchased and exchanged others, and carried on the business of a printer therewith, in a separate building, forty rods distant from his shop. On the 5th of *December*, 1820, the defendant *Smith*, as a constable of the town of *Hartford*, by virtue of an execution to him directed, in favour of the defendant *Shepard*, a *bona fide* creditor of *Marsh*, seized and sold, according to law, the goods in the declaration mentioned, being the whole of the printing apparatus then in the use and occupation of *Marsh*. Upon these facts the judge directed the jury to find a verdict for the defendants ; which he accordingly did ; and the plaintiff moved for a new trial, on the ground of a misdirection.

*N. Smith* and *Tousey*, in support of the motion, contended, 1. That *Marsh's* remaining in possession of the property mortgaged, and using it as his own, after the conveyance, was only evidence of fraud, proper to be submitted to the jury, but did not *per se* render the evidence fraudulent and void. *Burrows* v. *Stoddard*, 3 *Conn. Rep.* 431. 433. Suppose there had been a special verdict finding the facts stated in this motion ; or all the badges of fraud enumerated in *Twyne's* case ; could the court, upon such verdict, adjudge the mortgage void ? Whether the evidence of fraud be weak or strong, makes no difference with regard to the right of the jury to decide upon it. If the question of fact, in this case, has been improperly taken from the jury, it is impossible to say that justice has been done ; there has been no opportunity for justice ; no legal trial.

2. That if the property conveyed was by law protected from process, the mortgagor's remaining in possession, and using it as his own, could not render the mortgage fraudulent. The law considers a conveyance of property as fraudulent against creditors, only because it is an attempt to place it out of their reach. But if the property is already out of the reach of creditors, it will not help *them*, to declare the conveyance fraudulent. As between the *parties*, the conveyance in question is unquestionably good.

3. That the property conveyed, in this case, consisted of the debtor's *tools* or *implements*, necessary for upholding his life ; (a)

(a) *Stat.* 280, 1. ed. 1808.

*Hartford,*
*June,*
*1823.*

Patten
*v.*
Smith.

and was, of course, protected from process. These were the tools or implements, with which *Marsh* carried on the business of a *printer;* and they were indispensible for that purpose. The exemption extends to *all* such tools or implements; there being no limitation as to number or value.

4. That, at any rate, the question whether these implements were *necessary,* was a mixed question of law and fact, which ought to have been submitted to the jury, under the instructions of the judge.

*Daggett* and *T. S. Williams,* contra, contended, 1. That the conveyance in question was fraudulent, and the jury were properly instructed on that point, provided the property conveyed could be the subject of a fraudulent conveyance. *Marsh's* possession and use of the property, in the manner stated in the motion, furnished evidence of fraud, which, if unexplained, would entitle the defendants to a verdict: In other words, these facts, in the absence of all explanation, render the conveyance fraudulent; and this is a conclusion of law, which the judge is bound to pronounce. Had the defendants introduced proof of any facts tending to explain or repel the evidence of fraud; or had any such facts appeared in this case; it would have been proper for the judge to submit the whole case to the jury as a question of fact. But the evidence in relation to fraud was all on one side; and it was *prima facie* conclusive: What else could the judge do, but direct the jury to find accordingly ? *Sturtevant &* al. v. *Ballard,* 9 *Johns. Rep.* 337. 339. 342. 344. *Burrows* v. *Stoddard,* 3 *Conn. Rep.* 164.

2. That the property conveyed was not protected from process, not being *tools* or *implements* within the meaning of the statute. In the first place, the trade of *Marsh* was that of a *book-binder,* and not that of a *printer,* otherwise than as he was made so, by the purchase and use of this printing apparatus. But secondly, if *Marsh* had been a printer by trade, the printing apparatus in question cannot be considered as *tools* or *implements* within the statute. Tools are small articles ordinarily used by the hands. If a man were to establish a cotton factory, and put in machinery worth 10,000 dollars; would this be protected from process as tools of his trade ? *Daily* v. *May,* 5 *Mass. Rep.* 313. *Buckingham* v. *Billings,* 13 *Mass. Rep.* 82. The general policy of our law

is opposed to an extension of the provisions exempting property from civil process.

3. That if this property were protected from process, it might still be the subject of a fraudulent conveyance. The plaintiff held *Marsh* out to the world as the owner of this property ; and thereby gave him a false credit.

4. That the plaintiff could not make this question ; the privilege being that of the *debtor* only. He may waive his privilege ; and no one else can insist on it.

5. That from the facts admitted, it appears that justice has been done ; and, for this reason, a new trial ought not to be granted.

*Hartford,*
June,
1823.

*Patten*
*v.*
Smith.

HOSMER, Ch. J. This case presents three questions for the determination of the court. 1. Was the judge authorized to direct the jury, that they should render their verdict for the defendants ? 2. Were the goods and chattels taken by the defendants, *tools* of *Marsh's* trade, and legally exempted from execution ? 3. Was the conveyance by mortgage to the plaintiff, fraudulent in respect of creditors ?

1. In the charge to the jury, the judge assumed the decision of a question of fact ; and for this reason, it was incorrect. If, however, on considering the motion in this case, it clearly shall appear, that no injustice has been done, I would not, for the impropriety of the charge, advise a new trial.

2. All the personal estate of a debtor may be attached or levied on by execution, except " necessary apparel, bedding, *tools,* arms or implements of his household, necessary for upholding his life ; and upon such goods, also, if they shall be presented by the debtor." *Stat.* 280, 1. ed. 1808. Printing, unquestionably, is a mechanical employment. It, however, has been said, that a printing-press, cases and types, are not *tools* within the meaning of the statute ; and to establish this position, the case of *Buckingham* v. *Billings,* 13 *Mass. Rep.* 82. was cited. The act of the state of *Massachusetts* on this subject, is not identical with ours, and in one particular, at least, which furnishes no unimportant ground of construction, is entirely different. Household furniture, beyond the value of fifty dollars, is not exempted from execution ; and on this provision, considerable stress was laid by the court, in the before cited case, when ascertaining the intention of the legislature. I do not know that I should dissent from the

HARVARD LAW LIBRARY

*Hartford,*
*June,*
*1823.*

Patten
*v.*
Smith.

opinion expressed in *Buckingham* v. *Billings,* that the types, &c. levied upon, were not necessaries, as articles of the same kind were left unattached, to the value of more than sixteen hundred dollars ; but to some of the principles assumed, with great deference for the learned court, I cannot subscribe. As a general legal truth, a statute in derogation of the common rights of creditors, ought to receive a strict construction ; but if it concern the public good, it should be construed liberally. *Alexander Powlter's* case, 11 *Co. Rep.* 17. *The King* v. *The Archbishop of Armagh,* 1 *Stra.* 517. Now, the public has a deep interest in the prosperity of mechanical employments, and a sufficient corrective is interposed by the prescribed enquiry, whether the articles claimed to be exempted are necessary. In relation to the natural description of the goods, of which an exemption is demanded, the exposition of the law, in my judgment, ought to be liberal ; but so far as respects their protection, in a given case, on the ground that they are necessary for the upholding of life, this is a strict enquiry of *fact.*

It has been insisted, in conformity with the above mentioned case, that by the word *tools,* is indicated, such implements only as are used by the hand of one man ; but this confined construction of the term, I cannot admit. In its origin, the word in question was applied to such instruments only, as were of manual operation ; but the usage of speech has long since extended it beyond these bounds. On the principle assumed by the supreme court of *Massachusetts,* the blacksmith might be deprived of his anvil, the weaver of his loom, and the turner of his wheel, to the entire destruction of their respective occupations. It was the object of the statute, to protect the tools of a trade, so far as they were indispensibly necessary ; and the words of this, as of other laws, ought to be expounded, according to their popular acceptation, in order to attain the legislative intent. In manufactories of recent origin, there may be complicated machinery and expensive utensils of great value, which do not fall within the principle of exemption ; and to this subject I refer, without the intimation of an opinion, cautiously to guard against inferences, beyond the principles I have assumed.

That the printing-press, cases, and types, taken by the defendants, were the tools of *Marsh's* trade, within the intendment of the statute, I entertain no doubt. The two last

mentioned articles are such, in the strictest sense of the word; the former, is indispensible to attain the object of the legislature, in allowing the exemption contemplated; and they all are embraced, within the popular meaning of the preceding term.

In order to their exemption, the tools of a person's trade must be necessary for the upholding of life. Whether the goods taken by the defendants, are embraced within this description, is, exclusively, an enquiry of *fact*, which should have been submitted to the jury.

The pursuit of two trades by *Marsh,* did not deprive him of the legal exemption of his tools, in either trade, if they were necessary, and the latter occupation was requisite, for the procurement of subsistence.

It is clear, beyond dispute, that a tradesman may waive a privilege imparted to him by law; but, in this case, there was no intentional waiver, nor any thing, which the law pronounces to be of that character. *Marsh* had an equity of redemption in the goods taken, and remained the owner of them, in legal contemplation, subject to the right of *Patten,* to render them available for the payment of his debt. They remained in the possession and use of *Marsh,* as before their hypothecation; and by this act, they were not laid open to the attachment of his creditors.

3. Was the conveyance, by mortgage, the goods having been left in the possession of the mortgagors, fraudulent, in respect of creditors? If the above mentioned goods were not exempted from the attachments and executions of creditors, it is manifestly clear, that a strong badge of fraud exists, and even conclusive evidence of it, unless explained, by the most satisfactory reasons. *Burrows* v. *Stoddard,* 3 *Conn. Rep.* 160. 431. But, if the goods were shielded from the demands of creditors, by a legal exemption, how could the conveyance to *Patten* be made with an intention to defraud them? *Marsh* could have had no possible motives to put this property under cover, as it was already invincibly protected from every demand. The presumption of fraud is necessarily repelled, if the exemption insisted on, actually exist.

The other Judges were of the same opinion.

New trial to be granted.