### WYMAN SPOONER *vs.* ASAPH FLETCHER.

A printing press and types, and other instruments used in printing, are not exempt
from attachment or execution.

This was an action of *tresspass* for taking and carrying away a
printing press and various descriptions of types and instruments
used in printing.   Defendant pleaded the *general issue*, reserving
liberty of giving special matter in evidence under such issue, with-
out notice.   Plaintiff joined issue, consenting to said reservation.

At the trial in the county court, HUTCHINSON, J. presiding, the
parties agreed in writing, to the following facts ;—" that plain-
tiff is a printer by profession, and, at the time of taking said arti-
cles, was in the use of said implements for printing—that the arti-
cles taken were all the printing apparatus which plaintiff had or
owned, and that they were all necessary in carrying on his business
of printing a newspaper—that defendant was, at the time of taking
said articles, sheriff of the county of Windsor, and took said articles
at Royalton, in said county, by virtue of a writ of attachment to
him directed, in favor of James I. Cutter and Co. and against said
*Spooner*, and returnable to Windham county court at its (then)
next term—that said writ was entered, and is still pending in said
court, and that said *Fletcher*, as sheriff, holds said property to res-
pond such judgement as may be recovered in said suit."

These concessions being read to the jury on the trial of the cause,
the counsel for the defendant requested the court to charge the
jury, that implements of plaintiff's printing establishment were not
protected from attachment and execution by the statute, as tools
necessary for upholding life.   But the court refused so to charge,
but did charge the jury, that said articles were not liable to attach-
ment, or to be taken on execution, but were protected by said
statute.   The jury returned a verdict for the plaintiff. The defen-
dant's counsel excepted to the charge of the court, and removed
the cause to this Court and prayed for a new trial.

ORANGE,
*March,*
1830.

Spooner
*vs.*
Fletcher.

*Mr. Marsh, for defendant.*—If this property is exempt from attachment and execution, the exemption can be claimed only under the first section of the statute of 1797 ; the words of which are, " always excepting one cow, and such suitable apparel, bed-" ding, tools, arms and articles of household furniture, *as may be necessary for upholding life.*" This exemption is very restricted even to what is *necessary for upholding life* ; and it would seem at first view to extend to articles of the first necessity only, and such as were alike necessary to every man ; and that no peculiarity of situation, or peculiar occupation or employment, could vary the right of the party as to the articles exempted : and according to this view of the subject nothing would be exempted but such furniture as must be used—used every day, and tools, the want of which must produce immediate suffering. And little doubt can be entertained but that such was the intention of the framers of the act of 1797. At the time of passing that act persons in the highest walks of life in this state were not in possession of one half the apparrel, bedding, tools or furniture which are now by most persons supposed to be exempt by the operation of this statute. We are not, however, insensible that, as affluence has increased in the community, the court have very much enlarged the privileges of persons claiming this exemption. We have no reports of decisions in the neighboring states on statutes analagous to our own, which reflect much, even of a borrowed light, on this subject. It is believed that our Court have decided that the tools of a farmer used in his occupation, or the machines used in manufactures, or utensils of a distillery, are not exempt from execution in this state. And in Massachusetts, in the case of *Daily* vs. *May,* it was decided " that implements of husbandry necessary for tilling land are not within the statute"—*providing that the tools of any debtor necessary for his trade or* OCCUPATION shall be exempted from attachment and execution ; and, in the case of *Buckingham* vs. *Billings,* that machines used in manufactures, or the utensils of a distillery, are not exempted.

If the statute is to receive a liberal or extended construction it is not easy to perceive why implements of husbandry, and machines and tools used in useful manufactures, are not to be protected as well, at least, as the implements and tools of a printer, especially in Massachusetts, where the statute exempts not only tools used in trades, but also such as are necessary in the occupation of the debtor, whatever that occupation may be. It is surely very strange that the honest farmer and manufacturer who are acquiring

ORANGE,
*March*,
1830.

Spooner
*vs.*
Fletcher.

a livelihood by the most useful occupations in society, should not be protected in the use of their necessary tools of trade, and yet printers, the most querulous, snarling, and, in general, the most mischievous of all craftsmen, should be protected in the use of their implements of schism and mischief.

It may be asserted with confidence, that, independent of some modern decisions and of the loose and indefinite notions which of late have pervaded the ranks of those who have an interest in shaking and impairing the rights of creditors, it could never have entered the mind of any discriminating man, whose attention should have been drawn to this statute, that a printing press and other apparatus, necessary to sow scandal and sedition, and scatter libels over the community in form of a country newspaper, could possibly come within its provisions. On this point, however, we are not wholly destitute of authority. The case of *Buckingham* vs. *Billings* is much in point.—13 *Mass.* 82. The articles taken by the officer in that case, and for which the suit was instituted, were the same as in this case, a printing press, a quantity of types of different kinds, and some wooden cases necessary in carrying on the printing business. In the argument of counsel, and in the opinion of the court, the term *tools* is construed in a restricted sense to mean those smaller instruments which are necessarily used by hand, as the farmer's axe and hoe, the blacksmith's hammer and tongs, the planes, chissels, squares and compasses, &c., of the joiner and carpenter, and the like ; and this term can receive no other construction without doing violence to the plainest language.

It may be said that the press in this case is worked by hand : but the case does not show this to be so ; but if it did, no reasonable distinction can be taken between a printing press moved by hand, and one operated by water, steam, or horse power. The instrument is the same, and neither more or less a tool. It is properly a fixture, not a hand tool. And types, which are always estimated by the pound, in what barbarous dialect can they be called *tools*, and, above all, tools necessary for upholding life—tools of every moment's use, without which a man can neither live, or move, or have his being.

In the case above cited, the jury found a special verdict, stating that the articles taken by the officer were the press and other utensils of a printing office ; yet enough were left to carry on the business to a limited extent. But the court, disregarding that circumstance, decided in terms " that the articles taken by de-

ORANGE,
March,
1830.

Spooner
vs.
Fletcher.

" fendant were not tools of trade within the true meaning of the " statute."

This is truly a decision in point, and, as far as a decision in a sister state can be so, is an authority on which we may rely, especially, as it was made in the construction of a statute which admits of much greater latitude than our own.

*Mr. Collamer, for the plaintiff.*—1. These are the *tools* of the plaintiff's trade, and within the usual and popular sense of the term. Of this there can be no doubt, unless in relation to the press, and as to that, the plaintiff insists, that to limit the word *tool* to a simple instrument to be used by the hand of one man, is too confined a sense. Almost every mechanic has tools which would not come within this description. The blacksmith's anvil, the turner's lathe, the clock-maker's wheel engine, the weaver's loom, the cabinet-maker's and carpenter's two-hand-saw, and the coffee mill and clock in the house. The press is necessarily connected with the other tools, and the whole, separately, useless.

2. All mechanical pursuits require encouragement for the public good, and printing requires the *same protection* as others, as diffusive of intelligence and compatible with the liberty of the press.

3. The amount claimed is immaterial, as the statute has no limitation, except what is " necessary," and the court can make no other.—4 *Con. Rep.* 450, *Patten* vs. *Smith.*

4. The case of machines is to be distinguished by a variety of considerations : They are valuable to all men, and do not necessarily imply a trade. Many absolutely require the use of real estate, and the application of external power. They begin, perfect their work, and are not, like a press, useless, except with other tools and skill.

The opinion of the court was pronounced by

PADDOCK, J. The decision of this case must depend upon the construction to be given to the word *tools*, within the meaning of the statute. It is not to be supposed that the legislature ever intended to grant privileges or advantages for the amelioration of the condition of the poor, and yet have the opulent turn those same grants to the enhancing of their wealth. It has ever been the policy of our government so far to protect the poor in the enjoyment of a small pittance of property as that no one should be suddenly reduced to pauperism by the vigilance of a creditor ; and

ORANGE,
March,
1839.

Spooner
vs.
Fletcher.

to that end, there has been at different times, a variety of statutes passed, and, at present, a person may be admitted to the poor debtor's oath, retaining to himself " one cow, one swine, or the meat of one swine, ten sheep and one years product of ten sheep, forage sufficient to keep the cow and sheep through the coming winter, and such suitable apparel, bedding, tools, household furniture, as may be necessary for upholding life, together with military arms." And the same articles of property are exempt from attachment on *mense process* and final execution. From an examination of this list of property exempted, comparing the quantity and value of each class with the quantity and value of the same kind possessed by people in ordinary circumstances, we can arrive at a more satisfactory conclusion as to what the legislature intended by " suitable apparrel, bedding, *tools*, and household furniture, as may be necessary for upholding life." It is evident the legislature intended to limit, so far as they could, the amount of each class of property which would have a general application to the wants of poor people, as " one cow, ten sheep, &c.;" but no limitation or description could be given of *tools*, the variety being so great : therefore, it is left to courts to construe, and apply the construction to cases as they may arise. Hence it has been considered that implements used by blacksmiths might be classed under the term tools, as used in this act, being few in number, small in value, simple in their construction, and operated by the direct application of manual strength ; and this has been thought going quite far enough, as there may be some doubt as to the anvil and bellows being *tools*.

We are to give words their common and ordinary meaning, unless it is obvious from the statute, that the evil to be suppressed, or remedy to be advanced, requires the construction should be limited or enlarged ; and the word tool, by our best lexicographers, is defined *any instrument of manual operation.* Under the ancient law of distress *tools* were exempt, such as *the axe of the carpenter ; ( Co. Lit.* 47, 6 *;)* and the word in its general received sense implies instruments of small value, and used with the direct application of manual strength.—*Dailey* vs. *May*, 5 *Mass. Rep.* 313. In Massachusetts they have a similar law to ours, exempting " *tools of any debtor necessary for his trade or occupation ;*" and it has been decided by their courts, that printer's types, press, &c. were not exempt from attachment at the suit of a creditor under that statute.—*(Buckingham* vs. *Billings,* 13 *Mass. Rep.* 82.*)* And

Orange,
March,
1830.
——————
Spooner
vs.
Fletcher.

although their statute is broader than ours, yet we think their construction is a sound one ; for if printing types and presses were exempt, it would seem to follow as a thing of course, that many other kinds of property, the use of which was not known in our country at the passing of the act, must also be exempt ; such as lithographick and stereotype plates, engravings for stamping, calicoes, pictures or paperhangings.   Indeed, as we advance, the greater would be the difficulty of drawing the line between those articles which are and those which are not exempt ; for were it once established that those articles from which an impression is taken, either upon paper or cloth, were exempt from attachment, it would be claimed with much propriety that the machinery with which the paper and cloth were manufactured, is also exempt ; under which would be classed all the complicated machinery of our large manufacturing establishments.   But it has been decided in this state that moulds for making paper, also a machine for spinning operated by hand, called a billy and jenny, were liable to be attached.—*Kilburn* vs. *Deming*, 2 *Vt. Rep.* 404.   And certainly there would be less reason in saying that the contents of a printing office,some of which it is known *contain* thousands of dollars worth of  types and presses, should be considered *tools* within the intent and meaning of the statute.   For these reasons, a new trial must be granted.

New trial granted.

*Collamer*, for plaintiff.
*Charles Marsh*, for defendant.