JOHN A. GREEN ET AL. v. LUCINDA RAYMOND ET AL.

(Case No. 1133.)

1. INDEPENDENT ADMINISTRATION.— Creditors of the deceased husband may maintain a suit for conversion or waste of the assets of the estate, on a bond given by the widow as survivor, under art. 5494, vol. 2, Pasch. Dig.
2. STATUTORY EXEMPTIONS FROM FORCED SALE.— The printing press, type and cases needed in a printing office, and owned by the editor and publisher of a newspaper, were exempt from forced sale under the statute exempting "all tools and apparatus belonging to any trade or profession?" (Pasch. Dig., vol. 2, art. 5487).
3. INDEPENDENT ADMINISTRATOR.— The wife who qualified under the statute as survivor, by filing inventory and bond under arts. 5494–5497, could do, with reference to the estate, without an order of court, whatever, if acting as regular administratrix, she could have done by virtue of such order. As such she had the right to take in lieu of the one year's provisions allowed for herself and minor children, when the same could not be found in kind, its equivalent, and having received it, the creditors cannot call her to account for the manner in which she expended it.
4. SAME.— When such independent administratrix has exhausted the community assets before the presentation of a claim first known to her eighteen months after her qualification as such, she cannot be made responsible on her bond for a *pro rata* payment of such claim.

APPEAL from Travis. Tried below before the Hon. J. P. Richardson.

On August 25, 1873, appellants, as creditors of the estate of N. C. Raymond, deceased, brought this suit against Lucinda Raymond as principal, and Hancock and Walton as sureties on her bond, given as survivor in community. The bond was dated March 11, 1871. By the allegations in the petition it was claimed that the estate of N. C. Raymond was justly indebted to appellants, setting forth the facts with respect to the accrual of their claim, the death of Raymond, and the qualification of Mrs. Raymond by giving the bond sued on; the return of an inventory and appraisement, and charging that she had wasted the community property, and converted it to her own use; prayer for judgment on the bond.

Appellees answered by general demurrer, general denial, and specially claiming a certain printing press, type, cases, etc., which appeared on the inventory as exempt from execution, and forming no part of the estate; also that the provisions for one year exempt by law were not found in kind, and that she had reserved $1,200 as an equivalent, for the support of herself and five minor children.

Appellant replied, denying that the printing press, type, cases, etc., were exempt; also that as no administration had been opened upon the estate, she had waived her right to an equivalent for the exempt provisions not on hand.

October 8, 1875, the cause was tried. Verdict and judgment for the defendants.

*James B. Morris*, for appellants.

*N. G. Shelley* and *R. J. Hill*, for appellees.

WATTS, J. COM. APP.— Appellees claim that there is a fatal and fundamental defect in the asserted cause of action such as precludes a recovery, in any event, by appellants, and vigorously insist that it shall be considered in advance of the questions presented by the appellant.

On the 11th day of March, 1871, Mrs. Lucinda Raymond qualified as the survivor in community of the community estate of herself and her deceased husband, N. C. Raymond, by giving the bond required by statute, and returning an inventory of the property of the estate. This suit is by a creditor of the estate upon that bond. A general demurrer was presented to the petition and overruled by the court. The point made is, that a bond like this is not for the protection of the creditors, but for the children, and that therefore creditors cannot maintain an action upon the bond for a conversion or waste of the property. In this case the bond is in the terms of the law, which is as follows: " Shall be required to return an inventory and appraisement of all such property, and to file a bond, signed by one or more sureties, to be approved by and payable to the district clerk of the county, in an amount equal to the value of the whole of the community property, to the effect that he will faithfully administer the same, and pay over one-half of the surplus, after the payment of the debts with which the whole is properly chargeable, to such person or persons as shall be entitled to receive it." Pasch. Dig., vol. 2, art. 5494.

One of the essential conditions of the bond, it will be observed,

is that the community property shall be faithfully administered. No one is more interested in a faithful administration of that property than the creditor, who can look alone to it for the payment of his debt. A prudent and careful attention to the property, and the prompt payment of the debts with which it is charged, constitute the most important elements of a faithful administration. Therefore the creditor is interested in the administration, and ought to be as certainly secured in his rights by the bond as are the distributees of the estate. His rights are so far superior to theirs that it is the surplus only to which they are entitled after the debts are paid. In other words, the heirs inherit the property burdened with the debts; and one of the objects of administration is to apply as much of the estate as may be necessary to the payment of these debts. In short, this is the fundamental principle upon which the administration of the estates of deceased persons proceeds. It would seem that art. 5496, vol. 2, Pasch. Dig., was enacted to remove any doubt upon this question. It is as follows: "Such bond is suable, recoverable, and in every other respect the same as the bond of an administrator."

It is provided by art. 5577, vol. 2, Pasch. Dig., that "the remedy upon every bond filed in the district court may be by petition and citation to the sureties, to show cause why judgment should not be rendered against them in that court; where the liability of the principal has not already been established, he shall be included in the suit."

That suit could be maintained by a creditor upon a bond like that in this case, for a conversion or waste of the property, we think admits of no doubt.

N. C. Raymond, at the time of his death and for a long time prior thereto, was engaged in the publication of a newspaper in the town of Lockhart, Caldwell county, following this as his trade, and from which he derived a support for himself and family. He owned the apparatus constituting the printing office, that is, the press, type, etc. He was not a practical printer, that is, not a typesetter, but was the editor, proprietor and owner of the paper and office. Appellees claim that the press, type and other material pertaining to the office were exempt from forced sale, and did not constitute any part of the estate, and it was so held by the court below. Appellants urge this as error for which the judgment ought to be reversed.

In Buckingham v. Billings, 13 Mass., 82; Danforth v. Woodward, 10 Pick., 423, and Spooner v. Fletcher, 3 Vt., 133, it was held that

a printing press, types, and materials commonly used in a printing office where several persons are employed, are not tools within the meaning of a statute exempting "the tools of any debtor necessary for his trade or occupation" and statutes of like import.

The case of Patten *v.* Smith, 4 Conn., 450, arose under a statute exempting "necessary apparel, bedding, tools, arms or implements of his household necessary for upholding his life;" and it was there determined that a printing press, types, cases, etc., were exempt under the terms of the statute, provided the jury should find, as a matter of fact, that they were necessary for upholding the life of the debtor.

In the case of Sallee *v.* Waters, 17 Ala., 482, it was held under a statute exempting "all implements or tools of trade," that the press and type of a practical printer, which are necessarily used by him and his journeymen in the publication of a weekly newspaper, were exempt under the statute.

The case of Prather *v.* Bols, 15 La. Ann., 524, cited by counsel as sustaining the same proposition, is not accessible.

Our statute in force at the time of Raymond's death reserved from forced sale, among other things, "all tools and apparatus belonging to any trade or profession." The law then also provided that "the property reserved from forced sale by the constitution and laws of this state, or its value if there be no such property, does not form any part of the estate of a deceased person, where a constituent of the family survives." Pasch. Dig., vol. 2, art. 5487.

The settled policy has ever been to make liberal exemptions of property from forced sale in this state. That liberality has been extended from time to time, until to-day Texas, in this particular, surpasses all the other states of the American Union. The wonderful improvement and progress of the past few years attest the wisdom of that policy, which, if continued, will in after years be demonstrated by a commonwealth composed not only of prosperous, free and independent, but also of solvent citizens.

It has not been the policy of the judicial department to restrict this liberalizing tendency of the law-making power by a strict construction of these laws; on the contrary, they have been "liberally construed with a view to effect their objects and to promote justice."

The terms used, and especially the word "apparatus," is strikingly apt, a generic term of the most comprehensive signification.

The trade or profession of Raymond was that of editor and publisher of a weekly newspaper. What tools and apparatus belonged to that trade or profession? It is the printing press, type, cases,

etc., and not alone the pair of scissors, bottle of ink and goose-quill pen of the editorial department. The apparatus belonging to the trade of a publisher must of necessity include the press, type, cases, etc., which are essential to the conducting of that business. The blacksmith could as well dispense with his anvil and hammer, the shoemaker with his awl and last, the farmer with his plow and hoe, as could the publisher dispense with his press, type and cases; and yet all of these are exempt as belonging to these respective trades. So, in our opinion, are the press, type, cases, etc., of the publisher exempt as belonging to his trade.

Under the facts and circumstances of this case, we conclude that the printing press, type, cases, etc., were exempt from forced sale, and did not constitute any part of the estate of Raymond at his death.

The statute then in force also provided that if the provisions for one year were not found in kind among the property of the estate, an equivalent thereto in money should, on the return of the inventory, be ordered by the court to be paid to the parties entitled to same, as a claim of the fourth class, provided they did not have sufficient means for their support.

The appellee asserted a right to $1,200, in lieu of the one year's provisions for herself and five minor children, none of which was found in kind belonging to the estate. By the verdict and judgment, this claim was allowed, at least in part; and appellants claim that this is error. Their objection proceeds upon the idea that, unless there is a regular administration opened upon the estate, there could be no order allowing the equivalent in money; and that, by waiving a regular administration, she lost her right to this allowance for the support of herself and minor children. With an equal or greater show of reason it might be answered, that, in the absence of a regular administration, article 5487, quoted above, became absolute and unrestricted, and the value of the exempted property which was not found formed no part of the estate, but belonged to the surviving constituents of the family.

After Mrs. Raymond qualified as survivor in community she had full power over the property of the estate; could rent, exchange, sell and convey it, and could allow, compromise or pay debts, without the necessity of procuring any orders from the probate court. Her powers with respect to the matter were as full and complete as it is possible for those of an administrator to be, acting under the most ample and formal orders of court. Whatever the administrator could do, acting by virtue of the orders of court, she could

accomplish in the absence of such orders.   The administrator could pay this equivalent in money upon an order of court awarding it. She could reserve it from the assets of the estate without such order. The only restriction that now occurs to us as to her powers in this respect, that does not equally apply to a regular administration, is that when she is called to an account by the creditors, the burden is upon her to show that the equivalent claimed and reserved by her was reasonable.   Looking to the circumstances of the family, it does not appear to us that the amount claimed, or rather as allowed by the charge of the court, was unreasonable.

Nor is it material to the disposition of this case to inquire as to how she expended this equivalent.   It is immaterial whether she disbursed it in improvements upon the homestead, or in the purchase of provisions; that is a matter in which the creditor has no interest.

The court correctly charged the jury that they could not consider the question as to whether Mrs. Raymond did or did not possess the ability and fitness to keep a boarding house, and in that way make a support for herself and minor children; but that the question was whether or not they had sufficient means for their support.

It appears from the record that the parties to this suit are all residents of Travis county, and that about two and a half years had elapsed from the qualification of Mrs. Raymond before the claim sued on was presented or its existence made known to her.   During that time she had compromised and otherwise settled several claims against the estate, some of them being preferred claims under the law.   Doubtless the survivor in community in this respect is liable in the same way and to the same extent as an administrator.   But the fact that she has exhausted the community property in the payment of debts, to the exclusion of a claim that had not been presented, and of the existence of which she was not informed, would not render her liable on her bond for a *pro rata* payment of such claim. That rule has no application to a case like this.

The other errors complained of are such as could not affect the result of this case.   That is, owing to the controlling questions as determined in this opinion, no other verdict could have been properly returned, and no other judgment could have been properly rendered in the court below.

Therefore we conclude that the judgment ought to be affirmed.

AFFIRMED

[Opinion adopted November 20, 1882.]