THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK SHAKUN, Appellant.

(Submitted April 16, 1929; decided May 28, 1929.)

*John T. Loughran* and *Philip Wolinsky* for appellant. The chattels in question were machinery or fixtures — instrumentalities that are not " tools or implements of trade." (*Danforth* v. *Woodward*, 10 Pick. 423; *Buchanan* v. *Exchange Fire Ins. Co.*, 61 N. Y. 26; *Brewer* v. *Ford*, 59 Hun, 17; *Lord* v. *Johnson*, 34 Barb. 364; *Seeley* v. *Gwillim*, 40 Conn. 103; *Knox* v. *Chadbourne*, 28 Me. 160; *Doty* v. *Oriental Print Works Co.*, 28 R. I. 372; *Peyton* v. *Farmers' Nat. Bank*, 261 Fed. Rep. 326; *Webber* v. *Franklin Brewing Co.*, 123 App. Div. 465; 198 N. Y. 509; *Camardella* v. *Holmes*, 97 App. Div. 120.) The transaction in question is not within the spirit of section 2400 of the Penal Law. (*Rosa* v. *Butterfield*, 33 N. Y. 665; *People* v. *Warden*, 176 N. Y. 577; *London Realty Co.* v. *Riordan*, 148 App. Div. 854; 207 N. Y. 264; *People* v. *Schultz*, 149 App. Div. 844; 206 N. Y. 627.) Section 2400 of the Penal Law must be strictly construed. So construed, it has here no application. (*People* v. *Phyfe*, 136 N. Y. 554.)

*Joab H. Banton, District Attorney* (*Archibald Firestone* of counsel), for respondent. The chattels in question were such tools and implements of trade as to come within the purview of section 2400 of the Penal Law. (*Patten* v. *Smith*, 4 Conn. 450; *Davidson* v. *Hannon*, 67 Conn. 312; *St. Louis Type Foundry* v. *Taylor*, 35 S. W. Rep.

691; *Green* v. *Raymond*, 58 Tex. 80; *Bliss* v. *Vedder*, 7 Pac. Rep. 599; *Jenkins* v. *Mc Nall*, 27 Kans. 532; *Prather* v. *Bobo*, 15 La. Ann. 524; *St. Louis Type Foundry* v. *International Live Stock, etc., Co.*, 74 Tex. 651; *Harris* v. *Townley*, 161 S. W. Rep. 5.) This transaction comes squarely within the spirit of section 2400 of the Penal Law. (*Bliss* v. *Vedder*, 7 Pac. Rep. 599; *Sally* v. *Watters*, 17 Ala. 482.) Section 2400 of the Penal Law need not be strictly construed. (*People* v. *Clougher*, 246 N. Y. 106; *Cooper Snell* v. *State of New York*, 230 N. Y. 249.)

KELLOGG, J. The defendant loaned a sum of money, in excess of $200, at a usurious rate of interest, to Charles W. Megonegal, who has described himself as the owner of a " print shop." For the better security of the loan, the defendant took from Megonegal a chattel mortgage upon certain articles contained in the print shop, which are described in the instrument as follows: " One 10 x 15 C. & P. Printing Press with motor & equipment; One 30″ C. & P. Power Paper Cutter; Two City Stands with all type; One Hamilton Cabinet with all type; One Vecto Heater Furnace; Two Electric Fans; All furniture, fixtures, chattels and supplies." Section 2400 of the Penal Law provides: "A person who takes security, upon any household furniture, sewing machines, plate or silverware in actual use, tools or implements of trade, wearing apparel or jewelry, for a loan or forbearance of money, * * * conditioned upon the payment of a greater rate than six per centum per annum * * * is guilty of a misdemeanor." The defendant was convicted of a violation of the section upon the theory that, in accepting the mortgage from Megonegal, he had taken security, for a usurious loan, upon " tools or implements of trade."

The section incorporates the provisions of Penal Code, section 378, as amended by chapter 72, section 1, of the Laws of 1895, and chapter 661, section 1, of the Laws of 1904. Prior to the year 1895, section 378 made the mere taking of usury, irrespective of the giving of any pledge,

a criminal offense. (Cook's Criminal & Penal Codes, 1894.) The amendment of 1895 added a provision making criminal the loaning of personal credit at a usurious rate, where certain named articles were taken in pledge therefor. The amendment of 1904 eliminated, in their entirety, the provisions which declared the taking of usury to be a crime, and substituted therefor provisions in respect to the taking of security upon certain named property for the protection of an usurious loan. These identical provisions, under the heading " Taking security upon certain property for usurious loans," instead of the heading " Taking security for usurious loans," now constitute section 2400 of the Penal Law (Cons. Laws, ch. 40). In the year 1895 the Legislature had passed an act making criminal the exaction of a greater interest rate than six per cent, upon any loan of a less sum than two hundred dollars, made by any person or corporation, other than a corporation specifically empowered by the act to make such minor loans at a higher rate. (Laws of 1895, ch. 326.) These provisions, in substantially the same form, now appear in section 368 of the Banking Law (Cons. Laws, ch. 2). Thus, although the taking of usury generally has ceased to be criminal, through the amendment of 1904, its taking, without security given, in the instance of certain minor loans, has remained an offense.

Evidently, the Legislature has conceived that, in the practice of exacting usury from large borrowers, there lay no evil to be corrected. Likewise, was there none in taking security, for the protection of a usurious loan, upon personal property other than chattels necessary to the maintenance of life. On the other hand, persons, so necessitous that they must borrow paltry sums; persons, impelled by actual want to pledge the bare necessities of life; these must be protected from oppression by the usurer. Accordingly, it was made a crime to take usury upon loans of sums less than two hundred dollars. So, also, it was rendered criminal for the usurer to take in

pledge a borrower's "household furniture," his "plate or silverware in actual use," his "wearing apparel," his "tools or implements of trade." It was the legislative concept that, for the public good, there must be preserved to the needy borrower, free from the risk of mortgage seizure, such articles as a bed in which to sleep, a stove at which to cook, a table and utensils with which to eat, and clothes to cover his nakedness. Likewise, the borrower should similarly be protected in the possession of the tools of his trade. They are "necessary for upholding life" (*Henry* v. *Sheldon*, 35 Vt. 427); they "enable the debtor to obtain a livelihood for himself and family." (*Martin* v. *Buswell*, 108 Me. 263.) The legislative thought in respect to the evil inhering in the pledge of an artisan's tools finds apt expression in the familiar quotation: "No man shall take the nether or the upper millstone to pledge: for he taketh a *man's* life to pledge." (Deuteronomy, ch. 24, verse 6.) Self-evidently, legislative protection, through these criminal statutes, against the taking of usury, was intended to be cast about none other than the poor and necessitous. There was no thought to protect the opulent. Equally, it was the legislative intent narrowly to restrict the class of articles which might not be pledged in usury. There was no thought to save to the manufacturer or trader his accumulated assets. The costly machinery of an extensive business was not entitled to protection; only the tools by which an artisan earned a livelihood should be secured from seizure. These were the clear legislative purposes; in the light of them must the phrase "tools or implements of trade," contained in the section, be interpreted.

In the States of Massachusetts and Vermont it has been held that the printing presses, types and cases of a printer are not "tools" within the meaning of statutory provisions exempting from attachment and execution the tools of any debtor. (*Danforth* v. *Woodward*, 10 Pick.

423; *Buckingham* v. *Billings,* 13 Mass. 81; *Spooner* v. *Fletcher,* 3 Vt. 133.) In *Buckingham* v. *Billings* (*supra*) the court said that it was led to the conclusion that the term *tools* was used in the exempting statute to designate those implements which are commonly used by the hand of one man, in some manual labor necessary for his subsistence. In *Spooner* v. *Fletcher* (*supra*) the court said that the word *tools* implied instruments of small value, used with the direct application of manual strength; that it was not to be supposed that the Legislature ever intended to grant privileges or advantages for the amelioration of the condition of the poor and yet have the opulent turn those same grants to the enhancing of their wealth. On the other hand, in the States of Connecticut, Kansas and Louisiana it has been held that the printing presses of a printer are tools within the meaning of exempting statutes. (*Patten* v. *Smith,* 4 Conn. 450; *Jenkins* v. *McNall,* 27 Kans. 532; *Prather* v. *Bobo,* 15 La. Ann. 524.)

A reason for the divergence in decision will be found in a difference of judicial opinion as to whether the exempting statutes should be construed strictly or liberally. Thus, the Massachusetts court said of the exempting statute under consideration: " This statute, as it is in derogation of the common rights of creditors to secure their debts out of the property of their debtors, ought to have a strict construction; according to the true intent and meaning of the legislature, if that can be ascertained." (*Buckingham* v. *Billings, supra.*) On the other hand, the Connecticut court said: "As a general legal truth, a statute in derogation of the common rights of creditors, ought to receive a strict construction; but if it concern the public good, it should be construed liberally. (*Alexander Powlter's Case,* 11 Co. Rep. 17; *The King* v. *The Archbishop of Armagh,* 1 Stra. 517.) Now, the public has a deep interest in the prosperity of mechanical employments, and a sufficient corrective is interposed by the prescribed enquiry, whether the articles claimed to be exempted are necessary." (*Patten* v. *Smith, supra.*)

In *Ford* v. *Johnson* (34 Barb. 364) a statute then in force, exempting from levy and sale on execution " necessary household furniture and working tools," was under consideration. The court said: "And it is undoubtedly the duty of the court, since these acts ' concern the public good,' to give them an enlarged and liberal construction." Our present statute exempts from execution " the tools and implements of a mechanic, necessary to the carrying on of his trade, not exceeding in value one hundred dollars." (Civ. Prac. Act, sec. 665, subd. 6.) Even if, in an appropriate case, we should hold that a power-driven printing press and paper cutter were within these provisions for exemption, it does not follow that we ought to hold that the articles named are " tools or implements of trade " within the meaning of the statute presently considered. In the supposed case we would be dealing with a civil statute which might " concern the public good," and, therefore, should be liberally construed; whereas we are now dealing with a criminal statute which ought narrowly to be interpreted. Moreover, the civil statute exempts the tools and implements of a mechanic " not exceeding in value one hundred dollars " and none other. Thus the class of tools exempted is narrowly limited to implements of minor value, and the danger that an opulent debtor might employ the statutory exemptions to increase the capital of a business is avoided; whereas in the statute under consideration, no limiting value is placed upon the tools and implements of a trade, to receive a pledge of which is forbidden. For a limitation of the class, we may rely upon no qualifying words; we must depend upon the restrictive qualities which the words " tools or implements of trade " may themselves import.

It is well settled that a criminal statute should narrowly be construed; that acts otherwise innocent and lawful, do not become crimes, unless there is a clear and positive expression of the legislative intent to make them criminal. (*People* v. *Phyfe,* 136 N. Y. 554; *Burks* v. *Bosso,*

180 N. Y. 341.) In *People* v. *Phyfe* the court said: " The citizen is entitled to an unequivocal warning before conduct on his part, which is not *malum in se,* can be made the occasion of a deprivation of his liberty or property." In construing a statute such as this, so that it will have presented " unequivocal warning " to a citizen that his intended act is criminal, we must hold that those articles which may not be accepted in pledge for a usurious loan are the " tools or implements of trade " which in popular usage are commonly regarded as such. In that usage a " tool " is an " instrument of manual operation " (Oxford Dictionary; Webster's International Dictionary); it is an implement " commonly used by the hand of one man in some manual labor, necessary for his subsistence." (Bouvier's Law Dictionary.) " We are to give words their common and ordinary meaning, unless it is obvious from the statute, that the evil to be suppressed, or remedy to be advanced, requires the construction should be limited or enlarged; and the word tool, by our best lexicographers, is defined *any instrument of manual operation.*" (*Spooner* v. *Fletcher, supra.*) We think that it was in this restricted sense that the Legislature used the words " tools or implements of trade " in the statute under consideration.

The record contains no testimony describing the nature of the mortgaged printing press and the mortgaged paper cutter, nor describing their characteristic use. The one is a " printing press with motor & equipment; " the other is a " power paper cutter." Evidently, they are machines which are power driven. Whether the mechanism is simple or complicated; whether the machines are operated by one or by many; whether they were at any time operated by the mortgagor; as to these matters we are not informed. The other articles mentioned, such as types and shop furniture, are clearly employed as auxiliaries to the use of the press and the cutter, and by that use must be judged. We think that, under the

proof given in this case, none of the articles were " tools or implements of trade." Therefore, in taking a mortgage thereupon, the defendant was not guilty of a violation of section 2400 of the Penal Law.

The judgment of the Appellate Division and that of the Court of Special Sessions should be reversed and the information dismissed.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.