Paul J. Widlitz, J.
By four separate informations tried as one, the defendants were charged with violations of sections 2143, 2146 and 2147 of the Penal Law, commonly referred to as the Sunday Laws. After trial without a jury, all the defendants were found guilty and they now appeal from said judgments of conviction. The corporate defendant, White of Massapequa, Inc., is the owner and operator of a self-styled “ farmers’ market”; the defendant Murray Nemeroff is its president and the other defendants are employees of said corporation.
Specifically, the informations allege that on the various Sundays therein mentioned, the defendants, each aiding and abetting the others, sold the following allegedly prohibited items: three sets of men’s underwear, a pair of boys’ shorts, two pairs of socks and a hammer. Many other articles, not *256 authorized to be sold on a Sunday, were then and there displayed for sale.
The defendant corporation, White of Massapequa, Inc., has its place of business on six acres of land located south of the Sunrise Highway on the outskirts of Massapequa and within this county. A two-story structure, having floor area of over 29,000 square feet, is erected on the lot. Within the building are over 500 counters from which about 5,000 different items, literally ranging from toothpicks to furniture, are displayed for sale. Between 25 to 30 employees supervise the sale of this merchandise, an infinitesimal part of which consists of toilet articles, patent medicines, tobacco and cigarettes. The balance, and major part of the merchandise, consists of different kinds of fishing tackle and equipment for sports and camping, garden hose, shovels, rakes, lawn mowers and other garden and farm equipment; shoes, socks, underwear and all kinds of wearing apparel for men, women and children; furniture, luggage and toys; toasters, coffee makers and other kitchen utensils. It also claims to have sold or displayed for sale: fertilizers, grass and garden seeds, rose bushes, shrubbery and different kinds of fruit trees, finally, various types of vegetables and fruit.
According to the testimony of the defendant corporation’s president a breakdown of the gross sales over a 12 months’ period was: 10% from the sale of wearing apparel for men, women and children; 5% from sales of furniture, toys and kindred items; and 85% from sales of the remaining 5,000 items displayed for sale. There is no evidence as to what percentage of the business arose out of the sale of fresh fruits and vegetables.
The corporate defendant forthrightly admits having sold the items set forth in the informations and of displaying the myriad of other articles. It contends, however, that since fresh vegetables and other farm produce were also sold, the place of business was a “ farmers’ market ” as defined in both subdivision 5 of section 2147 of the Penal Law and subdivision 3 of section 156-e of the Agriculture and Markets Law and thus avoids the prohibitions of sections 2143 and 2146 of the Penal Law. The prosecution resists this argument contending that there was no “ farmers’ market ” involved because vegetables and farm produce principally were not offered for sale.
Although one of the factual issues to be determined herein is whether or not the establishment in question was a ‘ ‘ farmers’ market ”, the more important issue to be determined is die question of what merchandise a “ farmers’ market ” or *257 any other establishment may sell or display for sale on the Sabbath. Section 2147 prohibits all manner of public selling or offering for sale of any property on Sunday except for certain specifically stated items set forth in the subdivisions thereof. With the progressively increasing demands of the public, these exceptions have become more liberalized and today consist, in part, of the following permitted items:
“ 1. Articles of food may be sold, served, supplied and delivered at any time before ten o’clock in the morning;
‘ ‘ 2. Meals may be sold to be eaten on the premises where sold at any time of the day;
“ 3. Caterers may serve meals' to their patrons at any time of the day;
‘ ‘ 4. Prepared tobacco, bread, milk, eggs, ice, soda-water, fruit, flowers, confectionery, souvenirs, newspapers, magazines, gasoline, oil, tires, drugs, medicine and surgical instruments may be sold and may be delivered at any time of the day.
“ 5. Grocers, delicatessen dealers and bakeries may sell, supply, serve and deliver cooked and prepared foods, between the hours of four o’clock in the afternoon and half-past seven o’clock in the evening, in addition to the time provided for in subdivision one hereof, and, elsewhere than in cities and villages having a population of forty thousand or more, delicatessen dealers, bakeries and farmers’ markets or roadside stands selling fresh vegetables and other farm produce, and fishing tackle and bait stores may sell, supply, serve and deliver merchandise usually sold by them, at any time of the day.” (Emphasis supplied.)
It should be noted that until the enactment of subdivision 3 of section 156-e of the Agriculture and Markets Law in 1955, the definition of “farmers’ market” had to be found within the four corners of the Penal Law and, although the language employed in section 2147 is unclear, it is not obscure to the point of rendering the section unconstitutional. In seeking the legislative intent which motivated this Penal Law provision, the court is mindful of the rule of construction reiterated in People v. Shakun (251 N. Y. 107, 114): “We are to give words their common and ordinary meaning, unless it is obvious from the statute, that the evil to be suppressed, or remedy to be advanced, requires the construction should be limited or enlarged ”.
Everyone knows the distinctive attributes of a. bakery or of a delicatessen store. With the one Ave associate the sale of bread and cake, and Avith the other Ave associate the sale of cold cuts and salads. Thus it would be superfluous to add any *258 descriptive language as, for instance, bakeries 1 ‘ usually selling-bread ’ ’, or delicatessen stores ‘ ‘ usually selling cold cuts. ’ ’ However, when we come to the words “ farmers’ market ”, the Legislature, mindful of the interpretive problem that might arise, added certain limiting and restrictive words,, i.e., farmers’ markets or roadside stands selling fresh vegetables and other farm produce. It should be noted that the disjunctive is used therein to that if we interpolate — either farmers’ markets or roadside stands selling fresh vegetables and other farm produce — we have the full meaning of what was sought to be accomplished.[1] Here we have clearly spelled out the intent of the Legislature to make available to the public only edibles and the usual necessities commensurate with everyday living.
Unwarranted significance is given to those words, near the end of the paragraph, 1 ‘ usually sold by them ’ ’. Such words represent a further effort to restrict selling generally to those items of necessity within the category of fresh vegetables and farm produce.
In considering subdivision 3 of section 156-e of the Agriculture and Markets Law, which also purports to define farmers’ markets and which was enacted after said subdivision 5 of section 2147 of the Penal Law, perhaps if we first look behind the purpose of this added subdivision to the Agriculture and Markets Law, it might better enable us to appreciate its effect, if any, on the meaning of “ farmers’ markets ” as used in the Penal Law.
As bearing on the purpose and intent of said subdivision 3, the following is a quotation from a letter dated April 1, 1955 from The New Tork State Conference Board of Farm Organizations to the Governor:
“ Such designation (ed. note: meaning “ Farmers’ Market ”) is misleading to the public for the term ‘ Farmers’ Market ’ invites the belief on the part of the public that the market is operated by farmers and would therefore be a good place for high quality farm products.
‘ ‘ In this bill no attempt has been made to define a farmer for in our opinion no such definition is needed. The important thing to define is the term 11 farm products ’ ’ and this bill pins the definition of farm products to section 223 of the Agriculture and Markets Law.”
From the foregoing it is evident that the Sabbath Law was not contemplated but rather we have here an attempt to restrict the commercial utilization of the designation “ farmers’ market ”.
*259 Whether an enterprise is labeled a ‘ ‘ farmers ’ market ’ ’ is immaterial when considering the prohibitions set forth in section 2147; of more importance is the nature of the items being sold on the Sabbath. A roadside stand selling vegetables and fruits could sell its wares on a Sunday whether or not its sign reads 1 ‘ Farmer’s Market ” or “ Merchandise Mart ’ provided, of course, that there be no interference “ with the repose and religious liberty of the community” as proscribed in section 2146 of the Penal Law.
This brings us to the second question posed, to wit, what items may be sold pursuant to the provisions of the pertinent section 2147? Subdivisions 1, 2 and 3 of said section provide for the sale of prepared food. Subdivision 4 specifically sets forth the items which may be sold, without restriction as to the nature of the establishment offering same for sale. Tlie specific items enumerated might be classed as the necessities of everyday living. In reading subdivision 5 it is apparent that the Legislature seeks to provide in the same tenor, food and conventional essentials. Certainly, there was no intent to liberalize the Sunday Laws so as to favor only “farmers’ markets ” and virtually permit them, to the exclusion of everyone else, to operate a department store on the Sabbath.
Since the defendants concede that they sold items other than those specifically enumerated in section 2147 of the Penal Law, the convictions of the lower court are affirmed.
Submit order.

In connection with the definition of “ farm products ” see section 223 of the Agriculture and Markets Law.