*Litchfield,*
July, 1849.

Atwood
*v.*
DeForest.

———————

19  513
67  314

### ATWOOD and another *against* DeFOREST and another.

The articles of personal property exempted from execution under the clause "implements of the debtor's trade," are the tools of a mechanic used in carrying on his business.

To come within this clause, the debtor must be a mechanic, in contradistinction to a manufacturer; the implements must be tools, in contradistinction to machinery; and the trade must consist in the production of articles for the supply of the neighbourhood or particular customers, in contradistinction to such as are intended for sale in the market.

Therefore, where *A*, a spectacle-maker, and *B*, a blacksmith, formed a partnership, and engaged in the business of manufacturing german-silver spectacles, and employed in that business six workmen besides themselves, and were commencing the manufacture of cast-iron shears; when the implements used in making german-silver spectacles and cast-iron shears, except the tools for one person, were attached, by *C*, a creditor of *A* and *B*; it was held, that the articles attached were not implements of the debtor's trade within the meaning of the statute; and consequently, were not exempted from *C's* attachment.

THIS was a case agreed upon by the parties, without action, and submitted to the superior court, under the statute of 1848. *Stat.* 109, 10. §211.

The facts were these. On the 24th of *October*, 1848, *Edward W. Atwood* and *Levi Crouch* were in company, manufacturing german-silver spectacles; the partnership having commenced on the 21st of *June* previous. *Atwood* was a spectacle-maker, by trade; and *Crouch*, before he entered into the partnership, was a blacksmith, by trade, having no other knowledge of spectacle-making, than what he had acquired since the forming of the partnership. He had the necessary tools for carrying on the blacksmith trade; and worked, about half of his time, after the partnership, at

blacksmithing, and the other half, at the spectacle business; the blacksmith shop and spectacle shop, being under the same roof. *Atwood* and *Crouch* employed, in the manufacture of spectacles, six workmen, besides themselves; and had tools enough for themselves and workmen, to use in carrying on their trade, and no more. They were also commencing the manufacture of cast-iron shears, having obtained tools for this purpose, and having obtained some cast-iron blades, which they had welded preparatory to polishing. They were married men; and followed no other business than that above described, for a livelihood.

On the 24th of *October, George Lathrop,* being a creditor of *Atwood & Crouch,* prayed out a writ of attachment against them, by virtue of which, *Marcus DeForest,* as deputy-sheriff, by *Lathrop's* direction, attached, and took into his custody, all the tools aforesaid, leaving only tools enough for one person to use, at manufacturing spectacles, and sufficient tools for the use of one person at blacksmithing. By means of these doings, *Atwood & Crouch* were broken up in their business, and they and their workmen, were thrown out of employment, for the space of three weeks. In the meantime, they were under contract to pay wages to their workmen, to the amount of 65 dollars. *Lathrop's* attachment was for 800 dollars; and *DeForest,* subsequently, levied on the same property, on the same day, other attachments, to the amount of 200 dollars, in favour of other creditors. The tools which *Lathrop* claims to hold by his attachment, (a schedule of which was appended to the case,) are of the value of 75 dollars.

Previous to the attachment of these articles by *Lathrop, Atwood & Crouch* had mortgaged them, to secure certain notes in favour of one *Pierce;* which notes *Lathrop,* on the 28th of *October,* 1848, purchased of *Pierce,* and now claims to hold said articles as assignee of the mortgage.

The case was reserved for the advice of this court.

*J. H. Hubbard* and *Cothren,* for *Atwood & Crouch,* contended, 1. That the goods in question, being implements of the debtors' trade, are exempt from attachment; and whether the debtors were exercising their trade on a larger or smaller scale, or were pursuing two or more trades at the

same time, is immaterial. The statute being intended for the encouragement of mechanics and artisans, and the promotion of the public good, must be *liberally* expounded in favour of the debtor. *Patten* v. *Smith,* 4 *Conn. R.* 454. *Leavitt* v. *Metcalf,* 2 *Verm. R.* 342. *Dow* v. *Smith,* 7 *Verm. R.* 465. *Freeman* v. *Carpenter,* 10 *Verm R.* 433. It is unlimited in its phraseology as to the number and value of the implements, or kind of trade to be protected; and undoubtedly, should be construed to mean such implements as are necessary and convenient in carrying on the trade, in the ordinary manner. *Howard* v. *Williams,* 2 *Pick.* 80. It has been a prominent feature of the policy of our laws, for many years past, to *extend* and make *more liberal* the statute of exemption; and the court will not render its provisions more narrow, by construction. If the exemption is now too liberal, the remedy is in the legislature only. *Patten* v. *Smith,* 4 *Conn. R.* 450. *Buckingham* v. *Billings,* 13 *Mass. R.* 82. *Williams* v. *Miller,* 16 *Conn. R.* 144. 10 *N. Hamp. R.* 356.

2. That *Atwood & Crouch,* at the time of the attachment, had such an interest in and title to the property, as would enable them to sustain a suit for it. They had, not only the equity of redemption, but also the possession and enjoyment of the property; and were, in legal contemplation, the *owners* of it.

3. That they are entitled to recover the *value* of the property, at the time of the attachment, and all such damage as it appears from the case, they have sustained. *White* v. *Webb,* 15 *Conn. R.* 302.

*C. B. Phelps,* for *Lathrop* and *DeForest,* after a concise statement of the facts, contended, 1. That the great principle of subjecting all the debtor's property, to the payment of his debts, ought not to be invaded, *by construction.* So far as the statute has made exemptions, they will be protected, but no further.

2. That implements of the debtor's trade, within the statute, mean such implements, as the debtor uses in the exercise of his trade. The legislature had in contemplation the business of the individual debtor; and that only. A different construction would exempt an unlimited amount, without reference to the fact whether the debtor exercised his trade,

*Litchfield,*
*July, 1849.*

Atwood
*v.*
DeForest.

or not. All the instrumentalities in conducting manufacturing business, are clearly not implements, within the meaning of the statute; *e. g.* the water-wheel, steam-engine, a paper-mill, livery stable, stage-coach, &c. These are not exempt. *Potter* v. *Hall,* 3 *Pick.* 368. Are the millions of dollars, invested in machinery in this state, to be exempted, because it is used in the manufacture of such goods as individual mechanics may and do make? It is the labour of the mechanic, and not his speculative profits on the labour of others, that is protected. And if the mechanic is not in business, his implements are not exempt. The exemption attaches only to such implements as the debtor *personally uses,* and which are *indispensable* to the exercise of his trade. *Buckingham* v. *Billings,* 13 *Mass. R.* 82. Where a person who is not a tradesman, and does not use the implements himself, but employs others to work for him, they are not exempt. The statute is not at all applicable to that class of manufacturers who send their productions to others to be sold. It embraces those only who work at an employment *as a trade.*

3. That *Lathrop,* being the assignee of the *Pierce* mortgage, and representing *Pierce,* has right to the possession of the tools, so far at least, as *Atwood & Crouch* are concerned.

HINMAN, J. The question submitted to us, in this case, is, whether certain articles of personal property, which were attached by the defendant, *DeForest,* by virtue of process in favour of the defendant, *Lathrop,* were exempt from being taken on execution, on the ground that they were respectively *implements* of the trades of *Atwood* and *Crouch,* as whose they were taken. *Crouch* was a blacksmith, working at his trade, a portion of the time; but occasionally, at some branch of the manufacture of spectacles; and *Atwood* was a spectacle-maker. None of the blacksmith tools were taken by the officer; no question is raised, therefore, in regard to them; and as neither of them were engaged in making shears, and were neither of them shear-makers, it follows, that any article intended for that business, if there is any such in the list of articles taken, was as liable to attachment and execution, as any other property of the debtors.

In regard to such articles as belonged appropriately to the spectacle business, the facts agreed to are not as definite as

might be desired.   We, however, infer from them, that the parties were not engaged in the *trade* of spectacle-making, within the meaning of the word *trade*, as used in the statute under which it is claimed these articles were exempt from execution.   We infer this from the case agreed to ; which finds, that said *Atwood* and *Crouch* were in company, *manufacturing* german-silver spectacles ; and that they employed in said *manufacture* six workmen, besides themselves.   It is also found, that they were commencing the *manufacture* of cast-iron shears.   We suppose, from this language, it is fairly to be inferred, that these persons were not engaged in making spectacles for the supply of customers residing in their neighbourhood, or who resorted to their shop ; but that they were engaged in manufacturing the article, to be sent to market for sale ; in the same manner in which most of the manufacturing establishments in the country dispose of their goods : and from this inference, we have come to the conclusion, that they were not spectacle-makers within the meaning of the statute.

Trade, in its most extensive sense, means all sorts of dealing, by way of sale or exchange ; but, obviously, this is not the meaning of the word, as used in the statute regarding the exemption of mechanics' implements.   No one would contend, that the goods of a merchant are exempt from execution ; and yet, in a literal sense, they are implements of his trade.   By the word *trade*, as used in this statute, we suppose is meant *the business of a mechanic*, strictly speaking ; as the business of a carpenter, blacksmith, silversmith, printer, or the like ; and that it was not intended to include the business of a manufacturer, any more than it was intended to extend to the business of a merchant or farmer. When the first statute exempting the tools of a debtor's trade, "necessary for upholding life," was passed, there were but very few, if any, manufactories in the state ; but then, as now, all the different trades, for supplying the community in which they were located with such articles as were necessary, were in full operation ; and it was in reference to the persons who were then engaged in these mechanical trades, that this exemption was introduced.   Indeed, the word, as used in this statute, has now a more limited meaning, than the same word as used in the statute regarding apprentices.

*Litchfield,*
July, 1849.

Atwood
*v.*
DeForest.

*Litchfield,*
July, 1849.

Atwood
*v.*
DeForest.

That statute speaks of binding apprentices to learn a trade, or profession. Perhaps, primarily, before the introduction of manufacturing establishments, carried on, by the combination of machinery, the word might have had a similar meaning in both statutes: but if so, it must, we think, have meant, some of the handicraft business, at which individuals laboured, either for the supply of the immediate and constantly accruing necessities of a community or neighbourhood, or for their own support and maintenance. Every man knows, what in common parlance, is meant, by the trade of a blacksmith, or silversmith ; and we presume, no one would think, by one of those terms, was meant an individual or a corporation, who is carrying on, by means of machinery, the manufacture of a particular article to sell in the market, without any reference to the supply of the neighbourhood, where he carried on his business, as the manufacture of axes or forks ; and yet, these are articles made by blacksmiths. So, as we think, it is equally clear, that an individual or copartnership carrying on the business of manufacturing for sale in the market, without reference to the supply of the community where their establishment is located, a particular article, as german-silver spectacles, is not, within the meaning of the statute, carrying on the business of a silversmith, or even of a spectacle-maker. Such a concern is a *factory,* and not a mechanic's shop ; and the individuals carrying it on, are manufacturers, and not tradesmen. If it be said, that the distinction between a mechanic and a manufacturer, is not as precise as is desirable ; and that there is difficulty in determining to which class certain individuals belong ; especially, in cases where men are engaged in both the business of a mechanic, as well as in that of a manufacturer ; the answer is, the difficulty is not in the distinction itself ; that seems to be precise enough ; but it is in the application of the distinction to particular facts ; and that is a difficulty common to the application of most of the rules of law ; and in doubtful cases, it can only be solved, by the finding of a jury.

Reference must be had, also, to the time during which the exemption exists, as well as to the character of the business. Merely because a man has learned some mechanical trade, if he is neither pursuing it, nor contemplating its pursuit, his

*Litchfield*,
July, 1849.

Atwood
*v.*
DeForest.

implements ought not to be exempt; and it was not contemplated, by the legislature, that they should be. The object of the exemption is, to enable mechanics to carry on their trades, and not to favour them merely because they possess a particular kind of skill. If, therefore, they have voluntarily abandoned the business of mechanics, and do not contemplate pursuing it, their implements are not exempt. Although it appears, therefore, that *Atwood* was a spectacle-maker; yet, as he was not engaged in that business, *as a trade*, his implements are not within the exemption.

It is not intended, by any thing which is here said, that to be a mechanic, it is necessary to labour for a community or neighbourhood. In the large manufacturing establishments, there are, no doubt, many individuals labouring as mechanics for the manufacturer alone. The implements of such persons, we presume, are within the exemption, though their employers' machinery and implements would not be.

We have not thought it necessary, in this case, to consider the question, whether the exemption extends beyond the implements for the personal use of the mechanic, to such as are necessary for his journeymen and apprentices. A rather liberal construction of the statute, in regard to the quantity of tools which would be proper and useful to a mechanic, would probably be given; but whether this would extend so far as to protect several sets of the same implements for different individuals, it is unnecessary to determine. This decision also renders unimportant, the question as to *Lathrop's* right as assignee of *Pierce's* mortgage.

For the reasons above stated, we advise the superior court, that the defendants had right to attach the articles taken by them; and therefore, that judgment be rendered in their favour.

In this opinion the other Judges concurred, except **WAITE**, J., who was not present.

Judgment to be rendered for the defendants.