MICHAEL R. ENSCOE *vs.* JOHN DUNN AND ANOTHER.

GEORGE A. STEVENS *vs.* PATRICK DOWLING AND ANOTHER.

It is no objection to the validity of a receipt given to an officer for attached property, that the property was not in fact attached by the officer.

And the receiptor is estopped from denying the value stated in the receipt.

Where three such receipts were given at the same time by the same receiptors for the same property, attached on three different writs against the same defendant, with different values fixed with reference to the demands in the different writs, it was held that they were not to be regarded as one contract but that each receipt stood upon its own ground, as if it were the sole receipt given.

The horses and carts of a person engaged in the business of carting coal, are not protected from attachment as tools of a debtor's trade.

FOUR ACTIONS of covenant upon receipts given to officers for property attached; brought to the City Court of the city of New Haven, and tried to the court upon the general issue before *Stoddard, J.* Facts found and judgment rendered for the plaintiffs, and motions in error by the several defendants. The cases are fully stated in the opinion.

*W. C. Robinson,* for the plaintiffs in error.

*L. N. Blydenburgh,* with whom was *S. L. Bronson,* for the defendants in error.

PARDEE, J. The finding of the court discloses that on the

8th day of April, 1873, a writ of attachment in a case in which Solomon Rosenbluth was plaintiff and Joseph Dunn was defendant, returnable to the Court of Common Pleas of New Haven County, at its May term, was placed in the hands of Michael R. Enscoe, the present plaintiff, then a constable for the town of New Haven, with instructions to serve and return. This writ was legal in form and commanded the officer serving it to attach property to the value of six hundred dollars. On the next day Enscoe went to Dunn's house and told him that he had come to attach his property and that he must give him security. Dunn then owned five horses, six carts, and six harnesses. Some of these horses and carts were upon his premises when Enscoe was there. Upon the same day Joseph Dunn and John Dunn, the present defendants, executed and delivered to Enscoe as constable, a writing under seal, bearing date that day, wherein they acknowledged the receipt of these articles, and promised jointly and severally, for a valuable consideration, to redeliver the same in good order to the officer, or to any officer legally authorized to receive the same on demand; or in default thereof to pay the sum of six hundred dollars; or, if demand was not made before judgment rendered, the amount of damages and costs which should be recovered by the plaintiff in the case, if the same should fall short of the sum of five hundred dollars; and acknowledged themselves estopped from denying that the articles had been attached by the officer, and that they had received the same from him, and further agreed that the value of the articles was five hundred dollars.

The property mentioned in the receipt never in fact came into the possession of Enscoe. It remained in the possession of Joseph Dunn after the execution and delivery of the receipt, and he used it for his own profit, and consumed a part of it in the using. Rosenbluth recovered judgment against Joseph Dunn in the action above mentioned in March, 1875, for the sum of $308.33 debt and $79.91 costs, and took out execution for the same, together with twenty-five cents more for the execution. A constable of the town of New Haven demanded these sums of Joseph Dunn and John Dunn on

March 23d, 1875, but each refused to pay any part thereof. Upon the same day he made demand upon each for the property specified in the receipt and each refused to deliver any part thereof; and on May 12th, 1875, he duly returned the execution unsatisfied. The present action is based upon the receipt. The Court of Common Pleas rendered judgment therein for the plaintiff for the amount of Rosenbluth's judgment, with interest from the date thereof, and the defendants ask for a reversal of that judgment.

The legality of the contract known as an officer's receipt, even when executed in instances where the property specified therein has neither been taken into possession by the officer nor delivered to the receiptor, has been affirmed by this court; and we do not now accept the suggestion of the defendants that it induces the officer to disobey the precept of his writ and is therefore against public policy. A constable, it is true, is a public officer; he attaches property in the name of the state; but in doing this he is in reality simply obtaining security for a private debt. No arrangement therefore by which that end is attained in a manner satisfactory to both debtor and creditor can give any offence to the public. The public can have no interest in compelling the creditor to seize property when he desires to receive other and better security. In *Jones* v. *Gilbert*, 13 Conn., 521, this court said: "The valuation given in a receipt for property attached has ever been justly considered, upon demand in behalf of the creditor in the execution and a refusal, as conclusive on the parties. So far as the security of the debt is its object it is intended as a stipulation. Even receipts for property which had no existence, have been deemed an estoppel in relation to the rights of the creditor. The officer becomes responsible to the creditor for the amount thus stipulated, if there is no subsequent depreciation; and the receiptor's engagement is to save him harmless. Where, as in this case, the amount of the debt is not controverted and that exceeds the stipulated value, the question as to the actual value is irrelevant. The ratification of such agreements according to their just intent is important to both debtor and creditor. The debtor by pro-

curing some friend to give a written acknowledgment of the receipt of property which has not been attached at all, estimated at a sufficient sum, with an engagement to redeliver it on demand, shields his goods from seizure, secures the debt and protects the officer. When the debtor is willing to secure whatever judgment may be ultimately rendered, but is desirous in the meantime of disposing of property actually attached, the object of each party may be attained by an estimate acceptable to the creditor or officer. These agreements are voluntary and lawful. To nullify them would divest the parties of the important liberty of making arrangements for their mutual benefit in a crisis deeply interesting to both." In *Stevens* v. *Stevens,* 39 Conn., 481, the court, speaking of this species of contract, said: "It is conceded that such receipts are regarded for many purposes as contracts of indemnity, but not to the extent of nullifying a stipulation of agreed value of the property. The covenant in this case, to pay a stipulated sum not exceeding the amount of the judgment which the plaintiff in the attaching process may recover, is in the nature of an agreed valuation, and in regard to the effect of such a clause we cannot express our view of the law better than in the language of Judge SHERMAN in *Jones* v. *Gilbert.*" In *Parks* v. *Sheldon,* 36 Conn., 469, the court said: "The moment the defendant refused to redeliver the property, his liability to the officer became absolute for the amount of the execution and costs, provided it did not exceed the valuation named in the receipt, and if it did then for the sum so named."

In the case before us the amount of the debt due from Joseph Dunn to Rosenbluth, the original plaintiff, has been judicially determined; it remains wholly due and unpaid after legal demand upon both defendants upon the execution and upon the receipt; the liability of the officer to the judgment creditor continues; the property, which by the execution and delivery of the receipt was secured to the use of Joseph Dunn, then belonged to him.

He subsequently used the property for his own profit, and in using destroyed a part of it. Under these circumstances we

find no occasion for weakening the effect given to the recitals in the contract before us, as estoppels, by the decisions above cited. We think the defendants are barred from denying either the attachment, or the delivery, or the stipulated valuation. We shall thus give effect to their plain intent in executing the instrument.

On the 18th of September, 1873, three other writs of attachment against Joseph Dunn were placed in the hands of George A. Stevens, a deputy sheriff of New Haven County, with instructions to serve and return, one of which commanded the officer to attach to the value of seven hundred dollars, and the other to the value of five hundred dollars. In each of the writs Rosenbluth was also plaintiff, and all were returnable to the Court of Common Pleas for New Haven County, at its October term, 1873, and were directed to the sheriff of New Haven County or his deputy. On the 20th of September Stevens with these three writs went to the house of Joseph Dunn, and informed him that he had three writs of attachment against him, and told him that he must give security. He said that he would, and Stevens returned to his office. Joseph Dunn owned at that time the same property that he owned at the time Enscoe came there, but only one horse and cart was at home when Stevens called. Stevens saw no horses, carts or harnesses, nor did he know how many Joseph Dunn owned at that time, although he believed that he did own some. Some days thereafter the defendants executed and delivered to Stevens three receipts, each containing covenants identical with those in Enscoe's receipt, except that in each the stipulated valuation was adapted to the demand in the writ to which it was made applicable. These receipts were drawn by Stevens without knowledge on his part as to the precise number of horses, carts or harnesses which Dunn then owned or their value; and it was drawn without regard to any specific horses, carts or harnesses; and Dunn thereafter retained possession of and used such horses, carts and harnesses as he then owned. Rosenbluth subsequently recovered judgment in each of the three last named suits against Dunn, took out execution upon each in due form, and on the

23d day of March, 1875, upon each of these and upon each of the three receipts Stevens made a demand upon the defendants like to that made upon the execution and receipt in the first suit hereinbefore mentioned. They refused to pay the sum named in either execution or any part of it, or to re-deliver any of the property specified in either receipt.

The defendants now urge that these three receipts thus given to Stevens constitute but one bailment and that one judgment only can be rendered upon the three; that they represent but one act of attachment and one act of delivery, and are triplicate instruments containing the same contract.

We think that such an interpretation would do violence alike to the language of the contracts and to the intent of the defendants in signing them. Rosenbluth prayed out three writs, in each of which the officer was directed to attach property. In lieu of such attachment, in each case he accepted the defendants' receipt. He thereby became and still is responsible to Rosenbluth for the amount stipulated for in each. No covenant in either of the three contracts refers to or is made in any manner dependent upon any covenant in either of the others; each stands upon its own basis; the existence of the other two is neither a source of strength nor an occasion of weakness to any one of them; the makers of the three contracts have nowhere said that they shall all constitute but one; they are not to be consolidated by construction simply because each in succession protected Dunn in the possession of the same horses, carts and harnesses; each successive release of the property was presumptively as valuable to him as the first and might well be the consideration for a new contract; and we suppose it to be possible for each valid writ of attachment to support a valid receipt. Moreover, having determined that the stipulations in each of these contracts estop the signer from denying either the attachment or the delivery or the stipulated valuation, we have covered the ground of this objection; for when urged as an answer to each receipt it is simply a denial that there was any attachment in that particular case.

When the receipt was executed and delivered to the officer,

Dunn, the debtor, owned five horses, six carts and six harnesses, and used them in hoisting and carting coal, one horse being driven by himself and each of the others by a hired man; and thus he obtained his living. He now claims that these horses, carts and harnesses were protected from seizure by the statute which exempts the "implements of the debtor's trade." In *Atwood* v. *De Forest*, 19 Conn., 517, this court said: "By the word *trade,* as used in this statute, we suppose is meant *the business of a mechanic,* strictly speaking, as the business of a carpenter, blacksmith, silversmith, printer, or the like." This definition is also adopted in the recent case of *Seeley* v. *Gwillim*, 40 Conn., 109.

Dunn was engaged in the transportation of merchandise. This cannot be said to be the "business of a mechanic," either by definitions from the books or by the common understanding and speech of men. A special statute has given to the physician exemption for a horse of a value not exceeding $200; and to the fisherman, for one boat owned by one person and used by him. These instances show that the law intends to keep exemptions within narrow limits; and we see no reason for conceding to the transportation of merchandise protection for unlimited investments in horses and carts.

We advise that there be no new trial. In each of the cases of *Stevens* v. *Dunn et al.*, judgment should be rendered for the plaintiff for the amount of the judgment rendered in the Court of Common Pleas, with interest from the date thereof.

In this opinion the other judges concurred.