MARY K. MAGAW *vs.* SIDNEY L. BEALS.

Suffolk.    March 27, 28, 1922. — July 1, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Landlord and Tenant.    Agency,* Agent's liability for unauthorized act.  *Estoppel. Constable.  Attachment.    Conversion.    Trespass, Ab initio.*

One of three trustees, who by an unrecorded deed held title to certain real estate, executed a lease of it, which he signed in the name of the trustees' grantor, the record title holder, "by" himself, "Atty.," without such person's authority or knowledge, and which he delivered to a woman as lessee, who also signed the lease, dealing with him in good faith and in reliance upon representations by him "that he had sole charge and management of the property and that he was the only person for her to deal with."  *Held,* that

(1) The trustee by his conduct had made himself personally liable as lessor, whether he knew of his lack of authority and assumed to act as if he were authorized, or whether he honestly was of opinion that he possessed authority when as a matter of fact he had none;

(2) The lessee was estopped to deny the lessor's title;

(3) The trustee was estopped, as between himself and the lessee, to deny the validity of the execution of the lease.

The trustees' grantor, learning that his deed was unrecorded, made a new deed which was recorded within a month after the lease above described.  The trustee, after a breach by the lessee of a covenant to pay rent and water rates called for by the lease and an insufficient tender by the lessee to him, refused by him, without a re-entry upon the premises made a lease in his own name as an individual to a third person for the sole purpose of dispossessing the lessee, and such person, in pursuance of an undertaking planned by the trustee, accompanied by a constable, entered upon the premises and forcibly removed

all the lessee's furniture, household goods, effects and wearing apparel into the street, locked the door and retained the key, and refused a request by her that the property be returned to the house, informing her that this would not be done "unless she paid $150 . . . made up of the rent, water rates, some other incidental charges and the cost of moving." *Held*, that the lessee might maintain against the trustee personally an action of tort for damages due to unlawful ouster.

Where an officer attaches personal property which is exempt from seizure on execution and which may be mingled with other articles not exempt, there is no such confusion of goods as will justify him, even if the owner does not claim exemption, in attaching and holding possession of all the property.

The constable accompanying the person employed by the trustee to oust the lessee in the circumstances above described immediately attached all the property which had been moved from the premises under a writ in favor of the trustee personally with an *ad damnum* of $300, on the back of which he had written, "If goods and furniture of defendant are put out of" the premises described, "you are directed to attach them immediately and put them in storage if she does not direct what she wants done with them." *Held*, that, the lessee's necessary wearing apparel and household furniture "not exceeding $300 in value" being exempt from attachment by statute, the attachment was unlawful and the trustee, who directed it personally, was liable therefor in an action of tort against him personally.

Tort, with a declaration as amended in three counts, only the second and third of which are material, the first count being waived. The second count was to recover damages for mental suffering and injury to the feelings of the plaintiff by reason of her being evicted from the premises No. 851 Beacon Street in Boston. The third count was for unlawfully attaching and converting household goods of the plaintiff which were exempt from attachment. Writ dated April 18, 1919.

In the Superior Court, the action was tried before *Keating*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered for him on both the second and third counts. The motion was denied. The jury found for the plaintiff on the second count in the sum of $3,700, and on the third count in the sum of $850. On motion by the defendant it was ordered that the verdict on the second count be reduced to $2,000 and that the verdict on the third count be reduced to $600, and by agreement of the parties the judge reported the action to this court for determination, it being agreed that, if a verdict should have been ordered for the defendant on either count, judgment was to be entered for him on such count, and, if a verdict should have been ordered for him

on both counts, judgment was to be entered for him on both counts; otherwise, judgment was to be entered for the plaintiff on the verdicts as reduced by order of the court.

·  S. A. Dearborn, (N. Ullian with him,) for the plaintiff.

P. Nichols, for the defendant.

BRALEY, J.  The jury would have been warranted in finding that, ten or twelve years previous to March 17, 1919, the record title to the premises in question was in one Albert E. Little, also an attorney at law, who formerly had been in the same law office as the defendant.  While Mr. Little had no beneficial interest, the title being taken in his name for undisclosed reasons, the defendant, his brother, and his sister's husband, Frank A. Bourne, who acted as trustees under an unrecorded trust deed, were the real owners.  Mr. Little when he acquired title, simultaneously reconveyed to the trustees; but the deed never was recorded, and thereafter he took no part in the management and control of the property, and, until informed of the controversy out of which the case at bar arose, he was not aware that the deeds were unrecorded leaving him the owner of record, and he testified "that no one was authorized by him to rent the property in his name."  The defendant testified that, after negotiations with the plaintiff, he leased on February 27, 1919, the premises referred to in the record as 851 Beacon Street, to the plaintiff for a term of six months at a monthly rental payable in advance of "one hundred dollars" beginning March 1, 1919.  The lease was executed by the plaintiff, and by "Albert E. Little, by Sidney L. Beals Atty," and there was evidence that at the time of signing the defendant explained to the plaintiff "that he had sole charge and management of the property and that he was the only person for her to deal with."  The plaintiff, who had entered into occupation, made the first payment.  But more or less dispute shortly sprung up over repairs which the plaintiff claimed the defendant agreed to make, and over a water bill which the defendant had paid and for which he contended the plaintiff should reimburse him.  The plaintiff then complained to Mr. Little of the conduct of the defendant, and as a result of the information Mr. Little executed to the trustees a deed of the premises which was placed on record on March 17, 1919.

The defendant by assuming to act as the agent of Mr. Little,

impliedly held himself out as having authority to lease in Little's name to the plaintiff, who apparently, or it could be so determined by the jury, dealt with him in good faith and in reliance on his representations of authority. *Milliken* v. *Thorndike,* 103 Mass. 382. By so doing he made himself personally liable. And this is so, even if he knew of his lack of authority and assumed to act as if he were authorized, or whether he honestly was of opinion that he possessed authority when as matter of fact he had none. *Bartlett* v. *Tucker,* 104 Mass. 336. *May* v. *Western Union Telegraph Co.* 112 Mass. 90. *Conant* v. *Alvord,* 166 Mass. 311. A tenant who enters into the relation of landlord and tenant by demise and occupation as in the present case would be estopped to deny his landlord's title. *Cobb* v. *Arnold,* 8 Met. 398. And the defendant, who acted with full knowledge of the title at the time of the demise, is estopped as between himself and the plaintiff from denying the validity of the execution of the lease. *Howe* v. *Merrill,* 5 Cush. 80.

While there was evidence that counsel then acting for the plaintiff tendered the rent a day or two after the first of April and the proportionate part of the water rates due in April to the defendant, who refused to accept for the sole reason, that the plaintiff owed him money advanced in settlement of a water bill left unpaid by a prior tenant, which he testified she had agreed to pay, and the jury could say on the plaintiff's evidence that she never made the promise, and that the money paid by the defendant formed no part of the water rates accruing under the lease, yet the tender was insufficient, and she was in default. *Dewey* v. *Humphrey,* 5 Pick. 187. See *Schayer* v. *Commonwealth Loan Co.* 163 Mass. 322, 323, 324.

The defendant however without making any re-entry as provided under the covenants of the lease for a forfeiture, executed on April 15 a lease in his own name of the premises to one Leach, which the defendant told the jury was done for the sole purpose of dispossessing the plaintiff. In pursuance of this undertaking, planned by the defendant, Leach accompanied by a constable, entered upon the premises and forcibly removed all the plaintiff's furniture, household goods, effects and wearing apparel into the street, locked the door and retained the key. It was undisputed that in reply to a request of the constable as to what "he should

do with them" the plaintiff asked that the property be returned to the house, but was informed that this would not be done "unless she paid $150 . . . made up of the rent, water rates, some other incidental charges and the cost of moving."

The title to the premises was vested in the trustees when the lease to Leach was given, and the defendant is not shown to have had any authority to relet the premises. The ouster of the plaintiff was unlawful for which she can sue in tort for damages. *Fifty Associates* v. *Howland,* 11 Met. 99, 102, 103. *Chapman* v. *Harney,* 100 Mass. 353. *Rogers* v. *Snow,* 118 Mass. 118, 123. *Fillebrown* v. *Hoar,* 124 Mass. 580. *Skally* v. *Shute,* 132 Mass. 367, 372. *Gurney* v. *Tenney,* 197 Mass. 457. *Chetteville* v. *Grant,* 212 Mass. 17, 19.

The constable immediately attached all the property under a writ in favor of the defendant, the *ad damnum* being "three hundred dollars" on the back of which signed by him was the indorsement, "If goods and furniture of defendant are put out of 851 Beacon Street, you are directed to attach them immediately and put them in storage if she does not direct what she wants done with them." The plaintiff's necessary wearing apparel and her household furniture "not exceeding $300 in value" were exempt from attachment. R. L. c. 167, § 38, c. 177, § 34. *Richardson* v. *Buswell,* 10 Met. 506. *Mannan* v. *Merritt,* 11 Allen, 582. It is settled that where an officer attaches personal property exempt from seizure on execution, which may be mingled with other articles not exempt, there is no such confusion of goods as will justify him, even if the owner does not claim exemption, in attaching and holding possession of all the property. *Copp* v. *Williams,* 135 Mass. 401. *Cornell* v. *Mahoney,* 190 Mass. 265, 267. The defendant who directed the attachment to be made was a wrongdoer and is responsible in damages. *Richardson* v. *Reed,* 4 Gray, 441, 442. *Feneff* v. *Boston & Maine Railroad,* 196 Mass. 575.

The case was rightly submitted to the jury on each count as stated in the report, and in accordance with its terms "Judgment is to be entered for the plaintiff on the verdicts as reduced by order of the court."

*So ordered.*