SAMUEL FLAXMAN vs. CAPITOL CITY PRESS, INC., ET ALS.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued April 9th—decided June 3d, 1936.

*Harry B. Rosenblum*, with whom was *George J. Older*, for the appellants (defendants).

*Milton Nahum*, with whom, on the brief, were *Samuel Gould* and *Julius Apter*, for the appellee (plaintiff).

BROWN, J. The questions determinative of this appeal are confined to: claimed errors in the court's finding; whether the printing press and other chattels in question of the plaintiff are exempt from attachment under § 5791 of the General Statutes as concluded by the court; and if so, whether the plaintiff waived this right of exemption or is estopped from asserting it, as to which the court held in the negative.

The court did not err in refusing to find the facts complained of as, in so far as material, they were either sufficiently covered by the finding or were not admitted or undisputed facts, and the facts found assigned as error are wholly supported by the evidence.

The finding discloses these material facts: On February 6th, 1935, and for some time prior thereto, the plaintiff, whose occupation for the preceding nineteen years had been that of a printer, which was the only business in which he had ever engaged, conducted a printing business at 284 Asylum Street in Hartford,

which was his sole means of earning a livelihood for the support of himself, wife, and two children. It consisted of doing printing upon order only, for his customers, and he manufactured no printed matter for stock. Most of the work he did himself, a small part only being done by a single part-time employee. In the course of the business he used a 12″ x 18″ printing press driven by an electric motor with connecting belt; a paper cutter and a lead cutter, both operated by hand; and two type cabinets, fifty-two cases of type, two brass galleys, two composing sticks, three line gauges, a stone and stand, a rack of riglets, and a rack of wood furniture; all used in conjunction with the various printing operations and applied largely by hand. All of these articles were necessary and indispensable to the conduct of the business, and were of the moderate total value of $579, none of them being of an expensive type.

On February 6th, 1935, the named defendant, through its attorney, delivered a duly issued writ of attachment, in which $150 damages was claimed of the plaintiff, to the defendant Harger, a deputy sheriff under the defendant Dewey, sheriff of Hartford County, with instructions either to collect its claim of $75 or attach all of the property located at the plaintiff's place of business. The defendant Harger demanded payment of the plaintiff at his place of business, or in lieu thereof a bond, threatening otherwise to remove the plaintiff's property. The officer put a keeper in the place at the plaintiff's request and expense, to permit him to get a bond, but on February 11th, 1935, was notified that the plaintiff could not raise a bond, and the next day took all of the articles above enumerated into his custody and removed them, the plaintiff making no claim that they were exempt from attachment, and making no demand

subsequently for their return, other than may be inferred from the institution of this action.

Whether these articles are exempt from attachment, depends upon the interpretation of the words "implements of the debtor's trade" which are declared by § 5791 of the General Statutes to be exempt from such process. There is a conflict of authority as to whether a printing press and its accessories as here, are exempt under statutes similar in import if not identical in wording with our own. This originated with the decision by this court in 1823 of the case of *Patten* v. *Smith,* 4 Conn. 450. In that case, in construing the words of the statute in its then form providing that a debtor's personal estate might be attached, except "necessary apparel, bedding, *tools,* arms or implements of his household, necessary for upholding his life," we refused to follow the strict rule of construction laid down in *Buckingham* v. *Billings,* 13 Mass. 82, which had held seven years earlier that a printing press, type, and other implements of a printing office, were not within the provision of the Massachusetts statute exempting "the tools of any debtor necessary for his trade or occupation," and adopted a more liberal rule holding the printing press, cases, and types involved in the case before us to be tools of the debtor's trade within the intendment of our statute. In this decision we expressly rejected the contention that by the word "tools" was indicated "such implements only as are used by the hand of one man," stating (p. 454): "In its origin, the word in question was applied to such instruments only, as were of manual operation; but the usage of speech has long since extended it beyond these bounds. . . . It was the object of the statute, to protect the tools of a trade, so far as they were indispensably necessary; and the words of this, as of other laws, ought to be expounded according to their

popular acceptation, in order to attain the legislative intent." After further stating the cases and types to be tools of a trade "in the strictest sense of the word," we went on to say: "The former [the press] is indispensable to attain the object of the legislature, in allowing the exemption contemplated; and they all are embraced within the popular meaning of the preceding term [tools of a trade]."

In later decisions we have discussed this exemption and pointed out certain requisites pertaining thereto, but in none of them have we departed from the liberal rule of interpretation therein laid down. In *Atwood* v. *DeForest,* 19 Conn. 513, decided in 1849, after this exemption had been changed to the present wording of the statute by the substitution of the broader term "implements" for "tools" contained in the earlier enactment, we held that "trade" as used in the statute means the business of a mechanic making things on order for the supply of the neighborhood, as distinguished from the manufacture by machinery of a particular article to sell in the general market, and suggested that the exemption does not apply to a mechanic who has abandoned his business and does not contemplate pursuing it further. In *Seeley* v. *Gwillim,* 40 Conn. 106, we held that even a manufacturer may be entitled to the exemption of implements of his trade so far as used by him in person, though the fact that he is engaged in a trade could not extend the exemption to articles employed by him in manufacturing only, and intimated that not only such articles as were necessary at the passage of the act, but improved and more expensive tools as well, necessary when levied on by the creditor, would be exempt. In *Enscoe* v. *Dunn,* 44 Conn. 93, we held that horses and carts of a person engaged in the business of carting coal are not exempt as tools of a trade, since

this could not be said to be the business of a mechanic. And in *Davidson* v. *Hannon*, 67 Conn. 312, 34 Atl. 1050, we held that a photographer, the conduct of whose craft requires no extensive education, and depends upon the labor of his hands, is engaged in the business of a mechanic as is a carpenter, blacksmith, printer, etc. Applying the principles laid down in *Patten* v. *Smith*, supra, as amplified by these later decisions, is the plaintiff's property exempt from attachment under this provision of the statute?

Of primary significance in the determination of this question is the apparent similarity of the articles in that case and this, in their nature, their value, the owner's part in their use, and the kind and extent of the business where utilized. While the subordinate facts are not fully detailed in the report of *Patten* v. *Smith*, it may fairly be inferred that there, as here, the business in question was job printing to supply local orders, most if not all of which was produced by the labor of the owner himself. But here the further facts appear that this was the only business in which the plaintiff had ever engaged, that he carried it on right up to its interruption by the attachment complained of, that he depended upon it to support his family, and that all of these articles were indispensable to the conduct of it. These facts, in the light of some of the other cases above referred to, suggest further reason for concluding that these articles are exempt. Nor does the fact that the press in this case was electrically driven instead of by man-power, as in *Patten* v. *Smith*, require a different result. *Harris* v. *Townley* (Tex. Civ. App.) 161 S. W. 5. In this day, when the application of motive power to the operation of what formerly were such distinctively hand tools as the egg-beater in the home or hair-clipper in the barber shop is a matter of common

every-day practice, it cannot be held that propulsion by power per se excludes an implement from the exemption which the statute would otherwise afford. Such implements fall within the principle as to "improved and more expensive tools" enunciated in *Seeley* v. *Gwillim,* above cited. It is our conclusion that all the articles in question, under the facts of this case, are exempt from attachment under § 5791.

The cases relied upon by the defendants in support of their contention to the contrary, do not call for extended discussion. As already suggested, the case of *Patten* v. *Smith* gave rise to a conflict of authority. The decisions of Maine, Mississippi, South Carolina and Vermont, have followed the Massachusetts case of *Buckingham* v. *Billings,* above cited, while those of Alabama, California, Kansas and Louisiana, have followed *Patten* v. *Smith.* The former line of decisions, however, all relate to the interpretation of statutes in which the word "tools" and not "implements" with its broader signification (11 R. C. L. 513, § 23) is used, and no case has come to our attention where the words "implements of trade" appearing in the statute, were not construed to exempt a printer's press and equipment. Among cases holding such equipment to be exempt are *Sallee* v. *Waters,* 17 Ala. 482, and *Bliss* v. *Vedder,* 34 Kan. 57, 7 Pac. 599, 601.

Since the plaintiff's property was exempt from attachment, the original taking of it by the defendant Harger was wrongful and the attachment void. *State* v. *Hartley,* 75 Conn. 104, 108, 52 Atl. 615. He was guilty of conversion by his entry upon the plaintiff's premises and the seizure of these articles. A demand for their return was no prerequisite to the bringing of this action. *Meade* v. *Smith,* 16 Conn. 346, 367; *Coleman* v. *Francis,* 102 Conn. 612, 616, 129 Atl. 718. And the other defendants except the defendant Older,

are also answerable for Harger's acts, the defendant Dewey under § 230 of the General Statutes, and the named defendant by its participation. *Semple* v. *Morganstern,* 97 Conn. 402, 404, 405, 116 Atl. 906. Nor can the defendants be excused from liability upon the ground that the plaintiff waived his right of exemption. "A waiver is a voluntary relinquishment of a known right. Waiver is a fact or a conclusion from facts." *Dexter Yarn Co.* v. *American Fabrics Co.,* 102 Conn. 529, 555, 129 Atl. 527. The court not only has not found that the plaintiff had knowledge that his property was exempt at the time it was attached, but also has concluded that he did not waive the right of exemption. This record is conclusive that there was no waiver.

So much of the defendants' claim that the plaintiff is estopped by conduct from asserting the exemption as is predicated upon alleged remarks by him to the officer before the property was taken, is futile, for, as suggested earlier in this opinion, the court's finding against the defendants' contention upon this question of fact is conclusive. This issue is therefore narrowed to the sole question of whether the plaintiff's silence under the circumstances amounted to such estoppel. In a case where, as here, silence is the conduct relied upon to give rise to the estoppel, the existence of circumstances which impose a duty upon the one claimed to be estopped to disclose the fact which is known is essential. *Taylor* v. *Ely,* 25 Conn. 250, 259; *Mangusi* v. *Vigiliotti,* 104 Conn. 291, 296, 132 Atl. 464. But there is no duty to speak where the facts are equally within the knowledge of both parties or where the one claiming the estoppel, though he has not in fact equal knowledge, has convenient and available means of acquiring it. *Graham* v. *Southington Bank & Trust Co.,* 99 Conn. 494, 509, 121 Atl. 812; *Myers* v.

*Burke,* 120 Conn. 69, 76, 179 Atl. 88. It is, moreover, necessary that the silence be such as would naturally mislead the other party; *Goldberg* v. *Parker,* 87 Conn. 99, 107, 87 Atl. 555; and that the party claiming the estoppel has been or will be subjected to loss unless he can have the advantage of it, and there is no presumption in his favor. *DuCotey* v. *Wilkenda Land Co.,* 100 Conn. 255, 260, 123 Atl. 265. Harger was certainly as chargeable with knowledge of the terms of the statute exempting the property from attachment as was the plaintiff, he knew the nature of the property he was attaching, and, so far as the record discloses, could have ascertained the circumstances of the plaintiff's use of it by a simple inquiry; nor would the plaintiff's silence under these circumstances have any natural tendency to mislead him, as he clearly assumed the full responsibility of attaching the property as amenable to the process in his hands; and in the absence of any finding that the plaintiff had other property liable to attachment, or that any of the defendants suffered any substantial damage by reason of it, there is no basis upon which we can hold that the plaintiff's silence subjected them to such loss as would be the basis of an estoppel. *DuCotey* v. *Wilkenda Land Co.,* supra. Under these circumstances the plaintiff's silence did not give rise to an estoppel. *Lester* v. *Ladrigan,* 90 Conn. 570, 573, 98 Atl. 124; *Copp* v. *Williams,* 135 Mass. 401, 405; *Magaw* v. *Beals,* 242 Mass. 321, 136 N. E. 174, 176; *Johnson* v. *Lang,* 71 N. H. 251, 51 Atl. 908, 909. The cases relied upon by the defendants in support of a contrary conclusion, were confined to the situation where the exempt property in question is "so intermingled with other similar goods, which are not exempt, that the officer cannot distinguish them, and so is unable to tell whether the owner intends to claim any portion of the common

stock or supply as exempt" (*Copp* v. *Williams*, supra), are not applicable to the situation here.

In view of what we have said as to the effect of a duty to disclose upon the plaintiff's part, evidence as to whether Harger would have attached the property if the plaintiff had claimed that it was exempt, was immaterial.

There is no error.*

In this opinion the other judges concurred.

* By an oversight in making up the judgment-file the judgment was made to run against all the defendants, although the trial court's memorandum of decision directed that judgment be entered for the defendant George Older. The defect has apparently been overlooked and we call attention to it so that steps may be taken, if desired, to correct the mistake. *Sachs* v. *Feinn*, 121 Conn. 77, 88, note, 183 Atl. 384, 389, note.