[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, John Earley, has brought the above-captioned action to quiet title to a piece of real property on which the defendant has engaged in landscaping and other alterations, to enjoin the defendant from trespassing on the plaintiff's land and for other relief.
The defendant, Dr. Ahmed Roble, has filed a counterclaim alleging that the plaintiff is equitably estopped from seeking relief and further alleging that the plaintiff has trespassed on the defendant's property.
Though the parties stipulated to the actual boundaries of the defendant's property, as shown in Exhibit C, the rest of the facts are in dispute, with diametrically different versions of what took place with regard to objections to encroachments by each party on the property of the other. CT Page 7267
On the basis of the demeanor of the witnesses, the forthrightness or evasiveness of their responses, and comparison of their testimony with facts established by documentary evidence, the court has weighed the credibility of the testimony and finds the facts to be as follows. The plaintiff operates a thirty-acre dairy farm in Bethany on land he acquired from his father, who had also farmed it. In 1966 the plaintiff sold off a rectangle of his land with the address of 29 Poplar Swamp Road to Walter Gwardyak, who sold it to a Mr. Stokes. By a deed dated September 14, 1979, the defendant acquired that property from Katharine Stokes. The defendant is a college professor who teaches finance and economics.
The defendant's deed identifies his property as having 200 feet of frontage on Poplar Swamp Road, "both ends of said boundary being marked by iron pipes." The property description recites that the parcel is bounded "Easterly by land now or formerly of John B. Earley, 325 feet by a straight line marking an angle of 90 degrees with the Southerly line of Poplar Swamp Road." The southerly boundary is described as 200 foot "by a straight line parallel with the Southerly line of Poplar Swamp Road and making an interior angle of 90 degrees with the last mentioned boundary" (the eastern boundary). The deed describes the west boundary as a 325 foot line at a 90 degree angle to the southerly boundary. In short, the deed clearly describes an exact rectangle measuring 200 feet on the ends and 325 feet on the sidelines, with no irregularities. The property is surrounded on three sides by the plaintiff's property.
The parcel conveyed to the defendant and his predecessors in title has across its southeast corner a portion of a hay field on which the defendant continued until 1995 to harvest hay to feed to his cows. The court finds that the plaintiff obtained the permission of each of the prior owners to continue to cut hay in this area and that he continued to do so after the defendant bought his property but did not explicitly seek permission from the defendant. An old barbed wire fence runs across the corner of defendant's property, across the southeast corner of the rectangle where the portion of the plaintiff's hay field is located. That fence was installed before the plaintiff conveyed the rectangular parcel to Walter Gwardyak in 1966. As has been set forth above, the description of the defendant's property makes no reference to the barbed wire fence and it is not identified in the deed as relevant to any boundary of the property. CT Page 7268
At the time the plaintiff's father sold the land now owned by the defendant to Walter Gwardyak, the southeastern corner of the rectangle was marked by a surveyor's pin. That stake was found in the nearby woods after this controversy began. It has not been proven who removed it. The plaintiff testified that the stake disappeared during; Stokes' ownership, that is, before the defendant bought the property.
In 1982 and 1983 the defendant had a pond, identified on the land survey that is Exhibit C, as the "upper pond", dredged out. On that occasion, he asked permission to have heavy equipment enter his property over the eastern boundary from the plaintiff's property. Soon thereafter, the defendant brought in excavating equipment on the western boundary to dig out the "lower" pond. When the plaintiff questioned the defendant as whether he was sure that the alterations were confined to the defendant's own property, the defendant stated that he had ascertained the property line was fifty feet into the wooded area to the west of the pond. During the early 1980's the defendant erected a wooden shed on cinder blocks near the lower pond. The plaintiff accepted the defendant's representation that the boundary lay fifty feet away so made no objection to the shed.
In 1991 the defendant hired others to cut down trees, grade, install crushed stone and drains, and make a lawn in the area of the lower pond. The plaintiff and his wife came to the site to complain about heavy equipment having been moved over their land without permission. At that point, the landscaper advised the defendant that he should obtain a survey to determine where the boundary lay. The parties each obtained survey. Both surveys showed that the corner of the has field and the fence were on the defendant's land and that the two and one-half feet of the enlarged lower pond, the shed, picnic tables, much of the lawn and two drain pipes were on the plaintiff's property.
When the plaintiff's surveyor performed his survey, he discovered pins several feet into the plaintiff's land along the eastern side line, that is, the opposite boundary from the lawn and pond. The defendant initially intimated that these pins were in fact his boundary, and he proposed swapping the area between the pins and the boundary determined by the plaintiff's surveyor for the area of encroachment on the west side of his lot, in effect offering to drop a claim to land on the east side if the plaintiff would convey to him the land on the west side which he CT Page 7269 had encroached upon.
When the defendant's own survey matched that of the plaintiff, the pins along the eastern sideline disappeared, and the defendant dropped his proposal, instead suggesting a swap of the corner that contained the hay field.
The defendant testified that he did not have a survey made in order to determine whether the landscaping he was having done was on his own land before he caused the alterations to be made. He stated that he did not know the shape of his parcel but thought that the back boundary ran 200 feet from the westerly end of the barbed wire fence. He stated that after making that assumption he measured across the back and concluded that he could make topographical changes within a 200 foot area west of the end of the fence. He did not check the property description contained in his deed before making that assumption. When the controversy about encroachment on the western boundary arose, the plaintiff stopped haying in the corner of the field that was on the defendant's property and he filed this lawsuit seeking injunctive and declaratory relief.
The plaintiff makes no claim for money damages, including no claim for nominal damages for trespass.
The court finds that the shed and picnic tables in question are on the plaintiff's land. They are not attached to the land but can be removed. The court finds that the defendant caused an area of brush to be cleared, graded and configured into a lawn area, with drainage through two plastic pipes that empty excess water into the brush and marsh that was not previously useable for farming. Neither party introduced into evidence any survey of the defendant's property showing the location of ponds or other features prior to the changes made by the defendant. While the court finds that the defendant enlarged the lower pond, the plaintiff has not proven by a fair preponderance of the evidence that the land was wholly on the defendant's land before these changes. The court finds that the defendant regraded, installed drainage pipes, and placed a storage shed and picnic tables on land owned by the plaintiff. The court does not find that the defendant caused the pond to be enlarged into the plaintiff's property.
With regard to the plaintiff's claim, the court finds that the defendant has encroached upon the portion of the plaintiff's CT Page 7270 property that abuts the western side boundary of the defendant's property and that this encroachment is without claim or right but proceeded from the defendant's negligence in failing to ascertain the boundaries of his own lot before engaging in landscaping projects in an area of undifferentiated land.
The defendant claims that the plaintiff is not entitled to relief because, the defendant claims, the plaintiff must be equitably estopped because he removed the southwesterly boundary stake, creating confusion as to the boundary lines. The court finds this argument unavailing for two reasons. The first is that it was not proven that the plaintiff, rather than some prior owner of the Roble parcel, or some other person, removed the stake, so that no affirmative act by the plaintiff has been established. The second reason is that the duty was on the defendant to ascertain his own boundaries before incurring costs, not on the plaintiff to protect him from his own negligence.
The defendant has cited a case, Girden v. Alubowicz,136 Conn. 511 (1950), in which the Supreme Court ruled that a record owner is estopped from relief if he knows of an encroachment but makes no claim of title and engages in active acquiescence to the assertion of ownership by another. The Court stated the standard as follows:
 The interference with title to real property by estoppel in' derogation of a record title is not found. The case must be proven by clear and definite evidence if the party who relies on estoppel is to prevail. Giddings v. Emerson, 24 Conn. 538, 549; Monterosso v. Kent, 96 Conn. 346, 350, 113 A. 922; Mangusi v. Vigiliotti, 104 Conn. 291, 295, 132 A. 464. Silence on the part of the record owner, unless there is a duty to speak, does not meet this test. Flaxman v. Capitol City Press, Inc., 121 Conn. 423, 430, 185 A. 417.
In Girden v. Alubowicz, the Court found that a record owner who had taken part in the tax sale by which the defendant acquired the disputed property yet had made no claim title before the purchase was equitably estopped to assert his title against the defendant.
In the case before this court, the defendant has not proven at all, let alone by "clear and definite evidence" that the plaintiff, by word or deed, induced the defendant detrimentally to act in reliance on his words or actions, the standard for CT Page 7271 equitable estoppel approved by the Connecticut Superior Court inLunn v. Tokeneke Ass'n., Inc., 227 Conn. 601, 607 (1993); WadiaEnterprises, Inc. v. Hirschfeld, 224 Conn. 240, 252 n. 7 (1992).
The Court in Lunn made it quite clear that mere silence does not give rise to an estoppel to assert title to land: "For an estoppel to exist, there must be misleading conduct resulting in prejudice to the other party." Lunn v. Tokeneke Ass'n., Inc.,227 Conn. 607, citing John F. Epina Realty, Inc. v. Space Realty,Inc., 194 Conn. 71 (1984). The Appellate Court has likewise held that the doctrine of equitable estoppel does not apply unless the party against whom estoppel is claimed has said or done something to cause the other party to act to his own detriment. Bank ofBoston Connecticut v. Avon Meadow Associates, 40 Conn. App. 533,54-42 (1996); Palumbo v. Papadopoulos, 36 1 Conn. App. 799, 801
(1995).
The plaintiff has not been proven to have made any statement or to have engaged in any action that induced the defendant to expend money on altering land that did not belong to the defendant. The plaintiff did not take any position with regard to the location of the western boundary and he did nothing to mislead the defendant as to its location.
The defendant claims that by mowing hay in the southeast corner of the defendant's lot, the plaintiff induced the defendant to believe that the boundary line was farther to the west. The plaintiff's actions were equally to be interpreted as a trespass. The court does not find that the mowing communicated anything on which the defendant was entitled to rely with regard to the location of the western boundary.
The location of the old wire fence likewise did not constitute an action on which the defendant relied. That fence was not represented to mark any boundary at all, and it was in place well before the defendant purchased the property. Any assumption he may have made about its relevance to the boundaries of his property was the product of his own assumptions, not the result of any action or communication by the plaintiff on which the defendant could have relied. The property description in his deed make no reference to any fence as a boundary marker.
The court finds that the doctrine of equitable estoppel does not apply, and that the plaintiff is entitled to remedies to protect his interest in his property against encroachment. CT Page 7272
The first relief warranted is a judgment declaring that the land immediately to the east, south and west of the rectangle described in the defendant's deed is and remains the property of the plaintiff.
In order to be eligible for injunctive relief, a plaintiff must establish that he has suffered irreparable harm for which there is no adequate remedy at law. Karls v. Alexandra RealtyCorp. , 179 Conn. 390, 401 (1980). Since the harm is encroachment and unauthorized alteration to land, injunctive relief is warranted.
The plaintiff has further demonstrated entitlement to a prohibitory injunction, and it is ordered that the defendant, his agents and employees and persons acting at his direction are enjoined from asserting any ownership interest or making any changes to the plaintiff's land and from continuing to have picnic tables, a shed and any other structure on the plaintiff's property. Said items shall be removed no later than January 15, 1997.
The plaintiff seeks mandatory relief in the form of an order that the defendant restore the area to its preexisting condition. The area that the defendant graded and caused to be planted as a lawn was previously rough land covered with shrubbery. Some of the area was marshy. The area in question was near a brook and was not cultivated or used for any purpose by the plaintiff. The expense of restoring the area to its prior condition would far surpass the value of such an endeavor to the plaintiff. The only change that can be said to constitute damage or an alteration that will not be cured by the passage of time and regrowth of scrub vegetation is the insertion of two drainage pipes which alter the flow of water in this area of the plaintiff's property.
The exercise of the equitable power of the court is discretionary. Tomasso Brothers, Inc. v. October Twenty-Four,Inc., 230 Conn. 641 (1994). It is inequitable to grant an injunction that would cause damage to the defendant greatly disproportionate to the injury of which the plaintiff complains.DeCecco v. Beach, 174 Conn. 29, 35 (1977); Moore v. Serafin,163 Conn. 1, 6 (1972).
In this case, restoration of an area of marsh woodland to its original configuration by processes other than natural growth of CT Page 7273 vegetation would cause great expense to the defendant without any corresponding benefit to the plaintiff, who has described no use for the particular area in any configuration. Only the reconfiguration of the natural drainage poses a potential problem of future damage to the plaintiff's land. Because of these findings, the court limits mandatory injunctive relief to the following: the defendant shall remove the drainage pipes he caused to be installed on the plaintiff's land in a manner that causes the least possible disruption of the terrain and its preexisting vegetation.
Counterclaim
The defendant has pleaded as a counterclaim that the plaintiff has trespassed on his land in baling hay in the southeast corner of the defendant's lot. A trespass is the unwarranted intrusion on the land of another without license to do so. Hanson v. Carroll, 133 Conn. 505 (1947); Avery v. Spicer,90 Conn. 576, 579 (1916); Abington Ltd. Partnership v. TalcottMountain Science Center for Student Involvement, Inc., 43 Conn. Sup. 424
(1994). By driving tractors and baling equipment over the corner of the defendant's lot, the plaintiff committed a trespass.
The defendant contends that the damages to be awarded for this trespass on the east side of his property are the costs of his alterations to its west side. The court does not accept this as a credible measure of damages. The defendant's desire to create a lawn and picnic spot in the wooded area on the west side was not proven to have been the result of the cutting of hay in the southeast corner: the two activities were unrelated.
The defendant has not proven that the plaintiff damaged his land in any way during the trespass. While the hay baled by the plaintiff had some value, the defendant did not claim that he was also engaged in haying, such that the value of those bales would have been realized by him each year. Since no actual damages have been proven, the court awards nominal damages, that is, one dollar, as to the trespass.
Since the plaintiff has not engaged in haying on the defendant's land for at least three years and since he indicated under oath that he has no intention to do so in the future, the court finds that there is no reason to enter any injunction against any future trespass. CT Page 7274
Conclusion
Judgment shall enter in favor of the plaintiff declaring that title to the area where the defendant has altered the land is in the plaintiff except for that area specifically described in the defendant's deed.
The defendant is enjoined from exercising any control, trespassing, making any alteration or erecting any structure on the plaintiff's land. The defendant is further enjoined to remove the picnic tables, shed and drainage pipes by January 15, 1997, with the least possible disruption of the terrain and of preexisting vegetation.
On the counterclaim, judgment shall enter in favor of the defendant against the plaintiff in the amount of one dollar.
The plaintiff, John Earley, shall receive his court costs.
Beverly J. Hodgson Judge of the Superior Court